**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 1 3 2015
for CHIEF JUSTICE

This opinion was filed for record
at 8:00 Am on Aug 13, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 90337-9 |
| Respondent, | EN BANC |
| v. | |
| SEAN THOMPSON O'DELL, | Filed AUG 1 3 2015 |
| Petitioner. | |

GORDON McCLOUD, J.—Sean O'Dell was convicted of second degree rape of a child and given a standard range sentence of 95 months. O'Dell committed this offense 10 days after his 18th birthday.

O'Dell raises two issues in this appeal: one challenge to his conviction and one challenge to his sentence. With respect to the conviction, he argues that the trial court erred by refusing to instruct the jury on the affirmative defense of reasonable belief that the victim—here, a 12-year-old girl—was at least 14 years old or less than 36 months younger than O'Dell, based on the victim's declarations as to age. With respect to the sentence, he argues that the trial court abused its discretion when it

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

refused to consider O'Dell's own relative youth as a basis to depart from the standard sentence range.

For the reasons given below, we reject O'Dell's challenge to his conviction but remand for a new sentencing hearing at which the trial court can consider whether youth diminished O'Dell's culpability for his offense.

## FACTS

About 10 days after his 18th birthday, O'Dell had sex with 12-year-old A.N. According to A.N., the two met up on Sunday afternoon, along with a mutual friend, to drink wine and smoke cigars in the woods. Verbatim Report of Proceedings (VRP) (Jan. 16, 2013) at 254-59. A.N. testified that she, the friend, and O'Dell made plans to meet up again later that night but that the friend did not join them as planned. *Id.* at 268-75. She testified that she and O'Dell sat in the woods to wait for their friend and, after a few minutes of talking, O'Dell forcibly raped her. *Id.* at 280-87. A.N. also testified that she told O'Dell when they first met that she was 12 years old. *Id.* at 256-57.

O'Dell testified that he met A.N. at their mutual friend's house on Saturday night, where A.N. and others were drinking wine. VRP (Jan. 18, 2013) at 538. According to O'Dell, he commented that A.N. looked too young to be drinking and she responded, "'I get that a lot.'" *Id.* at 542. He testified that A.N. wanted to go

swimming at the beach, that she left the party with O'Dell to do this, and that the two had consensual sex on the walk to the beach. *Id.* at 544-48. He also testified that he first learned A.N.'s age when A.N.'s mother called him, the Monday after he had sex with A.N., and told him that her daughter was only 12. *Id.* at 572-74.

The State charged O'Dell with second degree rape of a child. With no objection from the State, the trial court instructed the jury that "[i]t is . . . a defense to the charge of Rape of a Child in the Second Degree that at the time of the acts the defendant reasonably believed that [A.N.] . . . was at least fourteen years of age, or was less than thirty-six months younger than the defendant based upon declarations as to age by [A.N.]." Clerk's Papers (CP) at 104. While deliberating, the jurors sent a question to the court regarding this instruction: "As to declarations as to age: Must it be verbal or can it be nonverbal?" VRP (Nov. 9, 2012) at 533. Ultimately, the jury was unable to reach a verdict and the court declared a mistrial. *Id.* at 542-43.

In the second trial, O'Dell again requested a jury instruction on the affirmative defense that he reasonably believed A.N. was "at least fourteen years of age, or was less then thirty-six months younger than the defendant, based upon declarations as to age by [A.N.]." CP at 79. This time the State objected. O'Dell argued that A.N.'s statement "I get that a lot" was an assertion that A.N. was older than she looked. VRP (Jan. 18, 2013) at 605-06; CP at 80-81. The trial court rejected that reasoning

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and denied the requested instruction. VRP (Jan. 18, 2013) at 607-08. The jury convicted O'Dell as charged. CP at 62.

At sentencing, the defense asked the court to impose an exceptional sentence below the standard range because "[t]he defendant's capacity to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of the law, was significantly impaired by youth." CP at 37. The defense argued that when O'Dell committed his offense, he "was still in high school, associating with school age persons" and "was not some mid-twenties man hanging out at the local high school or trolling the internet for young people." *Id.* at 40. Counsel also pointed out that "[h]ad the incident happened two weeks prior, and assuming the State could not convince the Court to prosecute [O'Dell] as an adult, he would be facing 15-36 weeks in a well-guarded juvenile detention facility . . . rather than 78-102 months in an adult prison." CP at 39. Finally, the defense quoted portions of the United States Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551, 569-70, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), which held that it is unconstitutional to impose the death penalty on a juvenile. CP at 38-39. *Roper* relied on research, by various medical and psychiatric associations, indicating that juveniles are more susceptible to negative influences and impulsive behavior and therefore less morally culpable for their crimes relative to adults. 543 U.S. at 570.

The trial court acknowledged this argument but ruled that it could not consider age as a mitigating circumstance under the Court of Appeals' decision in *State v. Ha'mim*, 82 Wn. App. 139, 916 P.2d 971 (1996), *aff'd*, 132 Wn.2d 834, 940 P.2d 633 (1997):

> The other [mitigating factor] that is relied upon is (e), "The Defendant's capacity to apprec – appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law was significantly impaired. . . ."
>
> So I – I've looked over, of course, this – this mitigating circumstance as well. And, really, I guess it comes down to the statement that Mr. O'Dell made, and that is, "I'm just a boy who made a mistake."
>
> . . . .
>
> So we're talking about his age. He's just a week past 18. Or he was not mature yet. Or whatever it is.
>
> *But then I looked up* State v. Ha'Mim, I think it is. H-A-hyphen-M-I-M. It is 82 Wn. App. 139, 1996. And that it talks about RCW 9.94A.390(1)(e), that factor I was saying, that capacity to appreciate the wrongfulness.
>
> And it specifically says that ". . . *a defendant's incapacity to appreciate the wrongfulness of the criminal conduct cannot be based on the youthfulness of the Defendant . . .*" The particular judge in that case based it on that and was overturned.
>
> So it is what it is.

VRP (Mar. 6, 2013) at 73-75 (emphasis added) (third and fourth alterations in original).

O'Dell appealed his conviction and sentence. *State v. O'Dell*, noted at 180 Wn. App. 1044, 2014 WL 1711548, at *1. He argued that he was entitled to the jury instruction on the affirmative defense of reasonable belief and that the trial court should have considered his relative youth as a basis for an exceptional sentence below the standard range.

The Court of Appeals held that the trial court properly rejected the affirmative defense instruction because there was no evidence that A.N. made any declarations as to her age. 2014 WL 1711548, at *2. It also rejected O'Dell's challenge to his sentence. *Id.* at *3. First, the Court of Appeals concluded that *this court's* decision in *Ha'mim*, 132 Wn.2d 834, barred the trial court from considering youth as a basis for an exceptional downward departure under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. 2014 WL 1711548, at *3. This court's decision in *Ha'mim*, like the *Court of Appeals'* decision that the trial court relied on at O'Dell's sentencing hearing, held that a young adult offender's age is not, in and of itself, a mitigating circumstance justifying an exceptional lowered sentence. *Ha'mim*, 132 Wn.2d at 846.

*State v. O'Dell (Sean Thompson)*, No. 90337-9

The Court of Appeals also rejected O'Dell's argument that *Roper* and recent research on adolescent brain development have abrogated *Ha'mim*:[1]

> Following the United States Supreme Court's decision in *Roper v. Simmons*, our legislature found that "adolescent brains, and thus adolescent intellectual and emotional capabilities, differ significantly from those of mature adults. It is appropriate to take these differences into consideration *when sentencing juveniles tried as adults*," and amended RCW 9.94A.540 prospectively. But this exception does not apply to O'Dell, who was an adult and not a juvenile tried as an adult.

*O'Dell*, 2014 WL 1711548, at *3 (footnotes omitted) (quoting LAWS OF 2005, ch. 437, § 1).

We granted review. *State v. O'Dell*, 181 Wn.2d 1020, 337 P.3d 327 (2014).

## ANALYSIS

I. THE TRIAL COURT PROPERLY DECLINED TO INSTRUCT THE JURY ON THE AFFIRMATIVE DEFENSE THAT THE DEFENDANT REASONABLY BELIEVED THAT THE VICTIM WAS AT LEAST FOURTEEN YEARS OF AGE, OR WAS LESS THAN THIRTY-SIX MONTHS YOUNGER THAN THE DEFENDANT, BASED ON DECLARATIONS BY THE VICTIM

A defendant is entitled to a jury instruction that is supported by substantial evidence in the record. *State v. Griffith*, 91 Wn.2d 572, 574-75, 589 P.2d 799 (1979). In determining whether the evidence is sufficient to support a jury instruction on an

---

[1] *See* Br. of Appellant at 9-10 ("The Washington State Supreme Court has concluded 'the age of the defendant does not relate to the crime or the previous record of the defendant.' . . . *Ha'mim*, 132 Wn.2d [at] 847. . . . But since *Ha'mim* was decided, courts have recognized youth does alter the nature of the crime and thus relates directly to the crime.").

7

affirmative defense, the court must view the evidence in the light most favorable to the defendant. *State v. Ginn*, 128 Wn. App. 872, 879, 117 P.3d 1155 (2005).

In a prosecution for rape of a child in the second degree (an offense defined not by the perpetrator's use of force but instead by the victim's age) "it is no defense that the perpetrator did not know the victim's age, or that the perpetrator believed the victim to be older." RCW 9A.44.030(2); RCW 9A.44.076. But it is an affirmative defense, provable by a preponderance of the evidence, that "at the time of the offense the defendant reasonably believed the alleged victim to be [at least fourteen, or less than thirty-six months younger than the defendant] based upon declarations as to age by the alleged victim." RCW 9A.44.030(2), (3)(b).

O'Dell contends that A.N. made a declaration as to her age when, in response to his comment that she appeared too young to be drinking, she responded, "'I get that a lot.'" VRP (Jan. 18, 2013) at 542.[2]

The trial court properly rejected this argument. The trial court noted in its ruling that A.N.'s comment "doesn't say anything . . . about any specific ages." *Id.*

---

[2] Suppl. Br. of Pet'r at 19 ("The plain language [of RCW 9.94A.030(2)] requires nothing more than a statement, an assertion of fact verbal or otherwise, relating to age. Sean O'Dell presented such evidence. He testified he was drinking with two other adolescents . . . . He commented to [A.N.] 'you look too young to be drinking.' She responded 'I get that a lot.' That is a statement by [A.N.] regarding her age, it is a factual assertion **that she was older than she appeared.** The foundation for the defense was met." (citations omitted)).

at 608. This determination was correct. We therefore affirm the Court of Appeals'
conclusion that O'Dell was not entitled to his requested affirmative defense
instruction.

II.    THE TRIAL COURT ERRED IN FAILING TO CONSIDER YOUTH AS A
       POSSIBLE MITIGATING FACTOR JUSTIFYING AN EXCEPTIONAL SENTENCE

Whether a particular factor can justify an exceptional sentence is a question
of law, which we review de novo. *Ha'mim*, 132 Wn.2d at 840.

The question presented in this case is the same question this court considered
in *Ha'mim*: whether a defendant's youth can justify an exceptional sentence below
the standard range when the defendant was over 18 when he or she committed the
offense. Thus, the parties to this case agree that *Ha'mim* is the relevant controlling
authority.

But the parties disagree about what *Ha'mim* held. O'Dell contends that
*Ha'mim* absolutely bars a sentencing court from considering "youth and its attributes
as mitigating factors." Suppl. Br. of Pet'r at 6. And he argues that we should
overturn *Ha'mim* because this prohibition is incorrect and harmful. *Id.* The State
interprets *Ha'mim* differently; it argues that age "may be relevant," under *Ha'mim*,
"for the statutory mitigating factor that the defendant's capacity to appreciate the
wrongfulness of his conduct, or to conform his conduct to the requirements of the
law, was significantly impaired." Suppl. Br. of Resp't at 10. But it contends that a

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

defendant must provide some evidence that youth *in fact* impaired his capacities, since youth does not per se automatically reduce an adult offender's culpability. *Id.*

For the reasons given below, we agree with much of the State's interpretation of *Ha'mim*. That decision did not bar trial courts from considering a defendant's youth at sentencing; it held only that the trial court may not impose an exceptional sentence automatically on the basis of youth, absent any evidence that youth in fact diminished a defendant's culpability. But we also conclude that the trial court in this case improperly interpreted *Ha'mim* just as O'Dell does: to bar any consideration of the defendant's youth at sentencing. Thus, we find that the trial court did not meaningfully consider youth as a possible mitigating factor in this case, and we remand for a new sentencing hearing.

A. Youth satisfies the two-part test this court applies to determine whether a factor legally supports a departure from the standard sentence range

To determine whether a factor legally supports departure from the standard sentence range, we apply a two-part test. *Ha'mim*, 132 Wn.2d at 840. First, a factor cannot support the imposition of an exceptional sentence if the legislature *necessarily* considered that factor when it established the standard sentence range.

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Id.* (citing *State v. Alexander*, 125 Wn.2d 717, 725, 888 P.2d 1169 (1995)).[3] Second, in order to justify an exceptional sentence, a factor must be "sufficiently substantial and compelling to distinguish the crime in question from others in the same category." *Id.*

> *1. Youth is not a factor that the legislature necessarily considered when it established the standard sentence ranges for offenders over the age of 18*

Although we addressed youth as a basis for an exceptional sentence in *Ha'mim*, that case discussed only the second part of the test: whether age is a factor sufficiently substantial and compelling to distinguish a defendant's crime from others in the same category. *Id.* at 845-47. Thus, we have never considered whether the legislature necessarily considered youth when it established the standard range sentences applicable under the SRA. The State contends that the legislature "explicitly considered . . . age" when it made the SRA applicable to felony offenders

---

[3] The rationale for this part of the test is that "'while factors which truly distinguish the crime from others of the same category may justify an exception, those which are inherent in that class of crimes'" cannot be the basis for such a distinction. *State v. Alexander*, 125 Wn.2d at 725 (quoting DAVID BOERNER, SENTENCING IN WASHINGTON, § 9.6 at 9-13 (1985)). Thus, for example, an offender's criminal history cannot justify an exceptional sentence "since criminal history is one of the two components (the other being the seriousness of the offense) used to compute the presumptive range." *State v. Nordby*, 106 Wn.2d 514, 518 n.4, 723 P.2d 1117 (1986).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

eighteen and older. Suppl. Br. of Resp't at 9 (citing RCW 9.94A.030(34)). This argument fails for two reasons.

First, this court has held that when the legislature defines (and therefore punishes) an offense according to the *victim*'s age, this does not necessarily prevent a sentencing court from relying on the victim's particular age to impose an exceptional sentence. In *State v. Fisher*, 108 Wn.2d 419, 423-24, 739 P.2d 683 (1987), for example, this court considered whether the victim's "particular vulnerability due to extreme youth" could justify an exceptional sentence above the range when the fact of the victim's youth—specifically, the fact that the victim was less than 14 years old—was already an element of the defendant's crime. The *Fisher* court held that it could, concluding that "[w]hile the Legislature might have reasoned that victims less than 14 years old were more vulnerable *in general* than those 14 or older, it could not have considered the particular vulnerabilities of specific individuals." *Id.* at 424 (emphasis added).

The same logic applies in this case. The legislature has determined that all defendants 18 and over are, *in general*, equally culpable for equivalent crimes. But it could not have considered the particular vulnerabilities—for example, impulsivity, poor judgment, and susceptibility to outside influences—of specific individuals. The trial court is in the best position to consider those factors.

12

Second, when the legislature enacted RCW 9.94A.030(34)—defining an "offender" subject to the SRA as "a person who has committed a felony established by state law and is eighteen years of age or older . . ."—it did not have the benefit of the data underlying the decisions in *Roper*, *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), and *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), since the SRA's definition of an "offender" predates *Roper* by roughly 25 years. LAWS OF 1981, ch. 137, § 3(11). Thus, when the legislature enacted RCW 9.94A.030(34), it did not have the benefit of psychological and neurological studies showing that the "'parts of the brain involved in behavior control'"[4] continue to develop well into a person's 20s.[5]

---

[4] *Miller* 132 S. Ct. at 2464 (quoting *Graham*, 560 U.S. at 68).

[5] Terry A. Maroney, *The False Promise of Adolescent Brain Science in Juvenile Justice*, 85 NOTRE DAME L. REV. 89, 152 & n.252 (2009) (collecting studies); *MIT Young Adult Development Project: Brain Changes*, MASS. INST. OF TECH., http://hrweb.mit.edu/worklife/youngadult/brain.html (last visited Aug. 4, 2015) ("The brain isn't fully mature at . . . 18, when we are allowed to vote, or at 21, when we are allowed to drink, but closer to 25, when we are allowed to rent a car."); Jay N. Giedd, *Structural Magnetic Resonance Imaging of the Adolescent Brain*, 1021 ANN. N.Y. ACAD. SCI. 77 (2004) ("The dorsal lateral prefrontal cortex, important for controlling impulses, is among the latest brain regions to mature without reaching adult dimensions until the early 20s" (formatting omitted)).

These studies reveal fundamental differences between adolescent and mature brains in the areas of risk and consequence assessment,[6] impulse control,[7] tendency toward antisocial behaviors,[8] and susceptibility to peer pressure.[9] As amici Washington Defender Association et al. put it, "[u]ntil full neurological maturity, young people in general have less ability to control their emotions, clearly identify consequences, and make reasoned decisions than they will when they enter their late twenties and beyond." Br. of Amici Curiae in Supp. of Appellant at 9-10. In *Miller*, *Roper*, and *Graham*, the Court recognized that these neurological differences make young offenders, *in general*, less culpable for their crimes: "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences[;] . . . [b]ecause 'the heart of the retribution rationale' relates to an offender's blameworthiness, 'the case for retribution is not as strong with a minor as

---

[6] Br. of Amici Curiae in Supp. of Appellant at 4-13, *Roper v. Simmons*, 543 U.S. 551 (2005) (No. 03-633)

[7] Giedd, *supra*.

[8] *See Roper*, 543 U.S. at 573-74 (citing AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 701-06 (4th ed. text rev. 2000)).

[9] Br. of Amici Curiae in Supp. of Appellant at 15-19, *Miller v. Alabama*, 132 S. Ct. 2455 (2012) (No. 10-9646, 10-9647).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

with an adult.'" *Miller*, 132 S. Ct. at 2458, 2465 (internal quotation marks omitted) (quoting *Graham*, 560 U.S. at 71 and citing *Roper*, 543 U.S. at 571).

It is precisely these differences that might justify a trial court's finding that youth diminished a defendant's culpability, and there was no way for our legislature to consider these differences when it made the SRA sentencing ranges applicable to all offenders over 18 years of age. Thus, we decline to hold that the legislature necessarily considered the relationship between age and culpability when it made the SRA applicable to all defendants 18 and older.[10]

---

[10] As the dissent correctly notes, our legislature addressed the relationship between youth and culpability in 2005, when—in response to "'emerging research on brain development'"—it eliminated mandatory minimum sentences for juveniles tried as adults. Dissent at 2 (quoting LAWS OF 2005, ch. 437, § 1). The dissent would hold that our legislature therefore "necessarily considered an offender's age when it determined that the adult sentencing guidelines attach when the offender is 18 years old." Dissent at 2. But the question before us is not whether the adult sentencing guidelines apply to an 18-year-old offender—everyone agrees that they do. The question is whether the legislature *necessarily* considered emerging research on adolescent brain development (the *Roper* research) when it established the standard range sentences applicable to adult offenders. *See State v. Nordby*, 106 Wn.2d 514, 518 n.4, 723 P.2d 1117 (1986) ("[f]or example, the sentencing judge may not list the offender's criminal history as a reason to justify an exceptional sentence since criminal history is one of the two components (the other being the seriousness of the offense) used to compute the presumptive range").

For all the reasons given above, we hold that the answer is no: the legislature did not necessarily consider the *Roper* research when it established the standard range sentences applicable to offenders 18 and over. To be sure, it considered that research in 2005 and amended a juvenile sentencing law in response. But the dissent reads far too much into the amendment, interpreting it as a bar to any youth-related exceptional sentencing under the SRA. *See* dissent at 2 (arguing that the defendant's relative youth can never justify an exceptional sentence because "the legislature reviewed the relevant literature and had the opportunity to reevaluate the age at which the adult sentencing

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

> *2. Scientific advances in the study of adolescent brain development, unavailable to the* Ha'mim *court, show that youth can significantly mitigate culpability*

This court recognized in *Ha'mim* that youth might be relevant to one of the mitigating factors listed in current RCW 9.94.535: an impairment of the defendant's "capacity to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." 132 Wn.2d at 846 (citing former RCW 9.94A.390(1)(e) (1996)). But the *Ha'mim* court then went on to conclude that the record before it contained "no evidence . . . that the Defendant's capacity to

---

guidelines attach"). This is a radical departure from our case law on exceptional sentencing.

Finally, it is not entirely clear what the dissent thinks the trial court may consider when sentencing a relatively young adult offender. Under the first prong of our test for valid exceptional sentencing factors, the dissent concludes that neither age nor the *Roper* research can play any role at all in the court's decision to depart from the standard range. The dissent explains that the legislature "necessarily considered" both age and "the relevant literature" on adolescent brain development before deciding, in 2005, to amend *only* the sentencing laws applicable to juveniles tried as adults (and not those applicable to offenders 18 and over). Dissent at 2. But later the dissent makes a different and much narrower argument: that "age *alone*" cannot justify an exceptional sentence. *Id.* at 4 (emphasis added). This rule is consistent with our decision; we remand so that the trial court may consider O'Dell's age *and* testimony, by numerous witnesses, about his general maturity level. In light of our fundamental agreement with the dissent on this point, we think that the dissent simply views the evidence differently than we do—it concludes, for example, that testimony about O'Dell's hobbies is not probative of his maturity level. Dissent at 6. But as the dissent acknowledges, "the trial court [is] in the best place to make such a determination." *Id.* at 8. And in this case, the trial court did not believe it had any discretion to do so. *See supra* at 5.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

appreciate the wrongfulness of her conduct or to conform it to the requirements of the law were in any way impaired." *Id.*

In reaching that conclusion, this court embraced broad reasoning from the Court of Appeals regarding the relationship between youth and culpability:

> In the context of RCW 9.94A.390(1)(e), the Court of Appeals has rejected a 17-year-old's argument that his youth should have been considered at sentencing. *State v. Scott*, 72 Wn. App. 207, 218-19, 866 P.2d 1258 (1993), *aff'd,* [*State v.*] *Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995). The *Scott* opinion states:
>
>> Scott asserts that his youth, 17 years old at the time of the crime, limited his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law," RCW 9.94A.390(1)(e), and thus, the exceptional sentence [above the standard range] was improper. *This argument borders on the absurd.*
>>
>> Granted, teenagers are more impulsive than adults and lack mature judgment. However, Scott's conduct cannot *seriously* be blamed on his "lack of judgment", as he contends. Premeditated murder is not a common teenage vice.
>
> *Scott*, 72 Wn. App. at 218-19 (footnote omitted).

*Id.* at 846-47 (first emphasis added).

Having embraced this reasoning—that it is "absurd" to believe that youth could mitigate culpability—this court went on to explain that youth alone could not be a nonstatutory mitigating factor under the SRA because "[t]he age of the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

defendant *does not relate to the crime* or the previous record of the defendant." *Id.* at 847 (emphasis added).

When our court made that sweeping conclusion, it did not have the benefit of the studies underlying *Miller*, *Roper*, and *Graham*—studies that establish a clear connection between youth and decreased moral culpability for criminal conduct.[11] And as the United States Supreme Court recognized in *Roper*, this connection may persist well past an individual's 18th birthday: "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18 [just as] some under 18 have already attained a level of maturity some adults will never reach." 543 U.S. at 574; *see also supra* n.5.

Today, we do have the benefit of those advances in the scientific literature. Thus, we now know that age may well mitigate a defendant's culpability, even if that defendant is over the age of 18. It remains true that age is not a per se mitigating factor automatically entitling every youthful defendant to an exceptional sentence. In this respect, we adhere to our holding in *Ha'mim*, 132 Wn.2d at 847. But, in light of what we know today about adolescents' cognitive and emotional development, we conclude that youth may, in fact, "'relate to [a defendant's] crime,'" *id.* at 847

---

[11] *See Miller*, 132 S. Ct. at 2464-65 ("those findings—of transient rashness, proclivity for risk, and inability to assess consequences . . . lessen[] a child's 'moral culpability'" (quoting *Graham*, 560 U.S. at 67-68)); *see also supra* nn.5-10.

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(quoting RCW 9.94A.340); that it is far more likely to diminish a defendant's culpability than this court implied in *Ha'mim*; and that youth can, therefore, amount to a substantial and compelling factor, in particular cases, justifying a sentence below the standard range.

For these reasons, a trial court must be allowed to consider youth as a mitigating factor when imposing a sentence on an offender like O'Dell, who committed his offense just a few days after he turned 18. To the extent that this court's reasoning in *Ha'mim* is inconsistent, we disavow that reasoning.

III. THE TRIAL COURT FAILED TO CONSIDER WHETHER YOUTH DIMINISHED O'DELL'S CAPACITY TO APPRECIATE THE WRONGFULNESS OF HIS CONDUCT OR TO CONFORM THAT CONDUCT TO THE REQUIREMENTS OF THE LAW

In this case, the trial court did not meaningfully consider youth as a possible mitigating circumstance. As detailed above, the trial court clearly believed that the Court of Appeals' decision in *Ha'mim* absolutely prohibited it from considering whether youth diminished O'Dell's capacity to appreciate the wrongfulness of his conduct or conform that conduct to the requirements of the law. *See* VRP (Mar. 6, 2013) at 74-75 ("'a defendant's incapacity to appreciate the wrongfulness of the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

criminal conduct *cannot be based on the youthfulness of the Defendant . . .*'")
(emphasis added)).[12]

This failure to exercise discretion is itself an abuse of discretion subject to reversal. *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005) (the trial court's failure to consider an exceptional sentence authorized by statute is reversible error). We therefore remand for a new sentencing hearing. At that hearing the trial court will consider, in light of this opinion, whether youth diminished O'Dell's culpability.

Finally, we note that despite the scientific and technical nature of the studies underlying the *Roper*, *Graham*, and *Miller* decisions, a defendant need not present expert testimony to establish that youth diminished his capacities for purposes of sentencing. As in a juvenile court decline hearing, where the court considers whether a juvenile's "sophistication and maturity" support his or her prosecution as an adult, lay testimony may be sufficient. *See, e.g., State v. M.A.*, 106 Wn. App. 493, 501

---

[12] The dissent contends that the trial court considered all of the testimony "from various acquaintances, family members, and O'Dell himself regarding his youthfulness" and rejected it as conclusory because "'[j]ust calling somebody a "boy" doesn't make them a "boy."'" Dissent at 5-6 (alteration in original) (quoting VRP (Mar. 6, 2013) at 74). We disagree with this reading of the record. As noted above, when the trial court stated that "[j]ust calling somebody a 'boy' doesn't make them a 'boy,'" it was referring specifically to "the statement that Mr. O'Dell made, and that is, 'I'm just a boy who made a mistake.'" VRP (Mar. 6, 2013) at 74. The trial court did not address the statements by numerous other witnesses regarding O'Dell's maturity level.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

n.14, 23 P.3d 508 (2001) (affirming decline of juvenile jurisdiction in part because "'[b]y all accounts, [M.A.] is physically very mature [and] [M.A.] has spent much of his youth with older adults'" (some alterations in original)); *State v. Toomey*, 38 Wn. App. 831, 835, 690 P.2d 1175 (1984) (finding juvenile sufficiently "sophisticat[ed]" to be prosecuted as an adult because "[w]hether by choice or not, Toomey had been on her own for over a year. She knew how to operate in her environment, and she readily involved herself in adult situations").

In this case, the defense offered just such lay testimony that a trial court should consider in evaluating whether youth diminished a defendant's culpability. *E.g.*, VRP (Mar. 6, 2013) at 62-63 (mother testifying that after O'Dell committed his offense, "[a]s I was cleaning a pack from his room so that we could move, I was struck by the contents of his room. In his room I found his Lego collection, a poster of Daffy Duck on Harley-Davidson, the stuffed kitty that had been on his bed since he was born . . . . [H]e's only a kid. He likes to play video games, and he likes to go hiking, and he likes to play music and tease his sisters. He rolls his eyes when he's forced on a family outing . . ."); *see also id.* at 42 (friend and former babysitter of the defendant testifying that he "has lots of growing up to do"), 44 (friend testifying that O'Dell "thinks and . . . talks and . . . acts like I did when I was 18-years old . . . . he is still forming his own identity . . . [and needs a chance to]

become a corrected and productive member of society"), 48 (family's pastor testifying that "[w]hen I met with [O'Dell] . . . just a couple weeks ago, I saw the same immature kid who wanted to be with good people and do good things"), 51 (family friend testifying that "[s]tudies show that boys do not mature as quickly as girls do. This remains true for Sean O'Dell . . . . Even though his birth date says he was 18, mentally, he was not"), 56 (cousin testifying that in "the time I've spent with [O'Dell] . . . I think the most grown-up thing I've ever done with him was play a video game . . . . He's just a kid. He's a young, young kid. He's a boy."), 59 (sister testifying that "[e]motionally, [O'Dell]'s still just a kid who likes hanging out, video games and family nights at the movies").[13]

## CONCLUSION

In *Ha'mim*, 132 Wn.2d at 847, this court held that a defendant's age, alone, does not automatically support an exceptional sentence below the standard range applicable to an adult felony offender. *Ha'mim* contains reasoning that some, including the trial court in this instance, have understood as absolutely barring any exceptional downward departure sentence below the range on the basis of youth.

---

[13] The dissent would hold that none of this testimony suffices to show that "age actually diminished O'Dell's capacity to appreciate the wrongfulness of his conduct or impaired his ability to conform his conduct to the requirements of the law." Dissent at 6. We decline to decide that question as a matter of law. Such factual and credibility determinations should be made by the trial court.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

That reasoning has been thoroughly undermined by subsequent scientific developments. Accordingly, we disavow it. We hold that a defendant's youthfulness can support an exceptional sentence below the standard range applicable to an adult felony defendant, and that the sentencing court must exercise its discretion to decide when that is.

We affirm the Court of Appeals as to O'Dell's conviction, but we reverse the Court of Appeals as to O'Dell's sentence and remand for a new sentencing hearing in accordance with this opinion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_____
Gordon McCloud, J.

WE CONCUR:

_____
Madsen, C.J.

_____

_____
Wiggins, J.

_____
González, J.

_____
_____, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 90337-9

FAIRHURST, J. (dissenting)—When Sean Thompson O'Dell was 18 years old, he raped A.N., who was only 12 years old. At sentencing, O'Dell sought an exceptional sentence below the standard range because he committed the rape 10 days past his 18th birthday. The trial court denied O'Dell's request and imposed a standard range sentence. We must decide whether a defendant's age alone may form the basis for an exceptional sentence. I would adhere to our precedent in *State v. Ha'mim*, 132 Wn.2d 834, 846, 940 P.2d 633 (1997), that held age is not a substantial and compelling basis to grant an exceptional sentence absent evidence that age actually affected the defendant's capacities. Because there is no such evidence here, I respectfully dissent.[1]

A.    O'Dell is not entitled to an exceptional sentence below the standard range based on his age alone

Generally, a trial court may impose a sentence outside the standard range only if there are substantial and compelling reasons justifying the exceptional sentence. *See* former RCW 9.94A.535 (2011). We use a two-part test to determine whether a

_____

[1] I agree with the majority on the jury instruction issue.

1

factor may legally support a departure from the standard sentence range. *State v. Law*, 154 Wn.2d 85, 95, 110 P.3d 717 (2005). "'[F]irst, a trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in establishing the standard sentence range.'" *Id.* (quoting *Ha'mim*, 132 Wn.2d at 840). Second, the "'mitigating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category.'" *Id.* (quoting *Ha'mim*, 132 Wn.2d at 840).

Beginning with the first inquiry, I agree with the State that the legislature necessarily considered an offender's age when it determined that the adult sentencing guidelines attach when the offender is 18 years old. *See* former RCW 9.94A.030(34) (2011). The majority finds fault in this conclusion because the legislature did not have the access to recent scientific literature addressing the psychological and neurological distinctions between juveniles and adults. *See* majority at 13. To the contrary, the legislature reviewed the relevant literature and had the opportunity to reevaluate the age at which the adult sentencing guidelines attach. The legislature found such research pertinent only to juveniles tried as adults. *See* LAWS OF 2005, ch. 437, § 1 ("The legislature finds that emerging research on brain development indicates that adolescent brains . . . differ significantly from those

of mature adults. It is appropriate to take these differences into consideration when sentencing *juveniles tried as adults*." (emphasis added)).[2]

Thus, the legislature has considered the offender's age on several occasions in determining the standard range sentence.[3] The establishment of penalties for criminal offenses is a legislative function, "'and the power of the legislature in that respect is plenary and subject only to constitutional provisions.'" *State v. Varga*, 151 Wn.2d 179, 193, 86 P.3d 139 (2004) (internal quotation marks omitted) (quoting *State v. Thorne*, 129 Wn.2d 739, 767, 921 P.2d 514 (1996)). We should not supplant the legislature's judgment in this matter with our own.

Turning to the second prong, a defendant's age alone is not a sufficiently substantial or compelling factor to distinguish the crime in question from others in the same category. I agree with the majority and the United States Supreme Court that "'[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18.'" Majority at 18 (alteration in original) (quoting *Roper v. Simmons*, 543 U.S. 551, 574, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)). But as both recognize, "'some under 18 have already attained a level of maturity some adults

---

[2]For this reason, I also reject the majority's reliance on *State v. Fisher*, 108 Wn.2d 419, 423-24, 739 P.2d 683 (1987). *See* majority at 12. In *Fisher*, we reasoned that the legislature could not have possibly considered the particular vulnerabilities of specific victims. Here, the legislature has reviewed the relevant scientific literature and understands the attendant properties that accompany youth. However, the legislature has expressly limited the effect of such research to juveniles tried as adults.

[3]The legislature also could have amended the age where the adult sentencing guidelines attach after our decision in *Ha'mim* but did not.

3

*State v. O'Dell*, No 90337-9
Fairhurst, J. (dissenting)

will never reach.'" *Id.* (quoting *Roper*, 543 U.S. at 574). This leads me to believe that age is not a reliable indicator of an individual's mental and emotional faculties for purposes of sentencing and is not alone sufficient to justify an exceptional sentence.[4] The majority even acknowledges that a defendant's age does not automatically result in an exceptional sentence, only in "particular cases." Majority at 19. This reasoning implicitly recognizes the existence of a factor that distinguishes those young adults that have the capacity to appreciate the wrongfulness of their conduct and those that do not. A defendant's age alone cannot form the basis for an exceptional sentence.

This is not to say that age is irrelevant. Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, a sentencing court may impose an exceptional sentence below the standard range if a defendant establishes that his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired. Former RCW 9.94A.535(1)(e) (2011). Indeed, *Ha'mim* itself recognized that age is relevant to this determination. 132 Wn.2d at 846. But a defendant may not rely on age alone. Rather, there must be evidence that his age actually diminished his capacity to appreciate the wrongfulness

---

[4] I find this particularly true toward the "margins between adolescence and adulthood" because "the relevant differences between 'adults' and 'juveniles' appear to be a matter of degree, rather than of kind." *Roper*, 543 U.S. at 600 (O'Connor, J., dissenting).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of his actions or impaired his ability to control his conduct. Here, as in *Ha'mim*, there is no such evidence.

B.     The trial court did not fail to exercise its discretion

Under the SRA, a defendant generally may not appeal a standard range sentence. RCW 9.94A.585(1). However, a defendant may appeal such a sentence if the trial court refused to exercise its discretion. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). "A court refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances; i.e., it takes the position that it will never impose a sentence below the standard range." *Id.*

Contrary to the majority's view, when read in context, the record reveals that the trial court did not categorically refuse to consider an exceptional sentence. In deciding whether O'Dell deserved an exceptional sentence under former RCW 9.94A.535(1)(e), the trial court heard testimony from various acquaintances, family members, and O'Dell himself regarding his youthfulness.[5] The trial court considered this testimony and rejected it as conclusory, stating that "[j]ust calling somebody a

_____

[5]*See* Verbatim Report of Proceedings (Mar. 6, 2013) at 42 ("He's still a kid."), 45 ("He's a kid. He don't know any better."), 48 ("When I met with him at that time just a couple weeks ago, I saw the same immature kid who wanted to be with good people and do good things."), 50 ("I know that Sean is a good boy."), 51 ("He was a young boy who made an honest mistake, like many boys his age have done. Even though his birth date says he was 18, mentally, he was not."), 53 ("He's just a boy. . . . He is a kind boy and he wouldn't hurt anyone."), 56 ("He's just a kid. He's a young, young kid. He's a boy. He made a stupid mistake, yes."). During allocution, O'Dell stated, "I'm here because I'm a boy who made a mistake." *Id.* at 67.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

'boy' doesn't make them a 'boy.'" Verbatim Report of Proceedings (VRP) (Mar. 6, 2013) at 74.[6]

Other than these statements, O'Dell presented no evidence that his age actually diminished his capacity to appreciate the wrongfulness of his conduct or impaired his ability to conform his conduct to the requirements of the law. The majority cites to testimony that O'Dell kept childish memorabilia in his room, such as a Lego collection and that he enjoyed playing video games. Majority at 21; *see also* VRP (Mar. 6, 2013) at 56, 59-60, 63. But whether an individual constructs Legos or enjoys video games tells us little about whether he has the capacity to appreciate the wrongfulness of his conduct. Indeed, these are activities enjoyed by many adults. *See* Thane Grauel, *Lego builds adult fan base*, USA TODAY (Nov. 28,

---

[6]The majority interprets this statement to mean that the trial court considered only O'Dell's statement and not comments from other witnesses. Majority at 19 n.12. But the court referenced O'Dell's statement that he was "just a boy" because it reflected the entirety of the comments made by O'Dell's relatives and friends. *See supra* note 5. This becomes clear when the court's statement is read in context. The court began by explaining that it had reviewed the mitigating circumstance and then it noted that the entirety of the assertions made by defense witnesses could be summarized by O'Dell's statement. VRP (Mar. 6, 2013) at 74 ("So I – I've looked over, of course, this – this mitigating circumstance as well. And, really, I guess *it comes down to* the statement that Mr. O'Dell made, and that is, 'I'm just a boy who made a mistake.'" (emphasis added)). Any doubt as to whether the trial court was addressing only O'Dell's statement or the sentencing statements as a whole is resolved when the court then referenced a comment made by O'Dell's mother that no one would ever refer to O'Dell as "'Mister.'" *Compare id.* at 63 (O'Dell's mother noting that "[n]obody would have called [O'Dell] 'Mister.'"), *with id.* at 74 (Trial court advising that "[j]ust calling somebody a 'boy' doesn't make them a 'boy.' And – and the fact that I use 'Mr. O'Dell' in here is a form of respect. It's a form of respect for whatever person that comes before me, whatever their age. I have called 7-year-olds 'mister.'"). The trial court therefore not only considered all of the sentencing testimony, but went as far as to respond to specific comments made by O'Dell's family.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

2014, 8:50 PM), http://www.usatoday.com/story/news/nation/2014/11/28/lego-builds-adult-fan-base/19637025/; Susanna Kim, *Seattle Guy's Lego Man Cave Contains About 250,000 Pieces and a Bar*, ABC NEWS (May 5, 2015, 1:05 PM), http://abcnews.go.com/US/seattle-mans-lego-man-cave-250000-pieces-bar/story?id=30818092; s*ee also* Entm't Software Ass'n, Essential Facts About the Computer and Video Game Industry 3 (2015), http://www.theesa.com/wp-ontent/uploads/2015/04/ESA-Essential-Facts-2015.pdf (finding that the average video game player is 35 years old and only 26 percent of video game players are under the age of 18 years old). These activities in and of themselves are not particularly reflective of O'Dell's general culpability. In short, they are neither substantial nor compelling to justify an exceptional sentence.

Contrary to establishing diminished culpability, the evidence from trial revealed that O'Dell actually possessed the capacity to appreciate the wrongfulness of his actions. For example, during direct examination, O'Dell testified that he was worried when he learned A.N. was 12 years old because he knew that his conduct "couldn't be legal." VRP (Jan. 18, 2013) at 550. Moreover, it cannot be said that O'Dell succumbed to peer pressure because of his youth. The record does not reveal any negative influences from peer pressure. In fact, O'Dell was the most sophisticated and mature person involved during the weekend that the rape occurred. A.N. was 12 years old and in the sixth grade, and their mutual friend was 13. By

contrast, O'Dell was 18 and a senior in high school. In this context, O'Dell's claim that he was "just a boy" is suspect, VRP (Mar. 6, 2013) at 67, and the trial court was in the best place to make such a determination.[7]

Because O'Dell presented no other evidence regarding his intellectual and emotional capabilities, the trial court recognized that all that was left was O'Dell's chronological age. *Id.* at 74 ("So we're talking about his age. He's just a week past 18."). Properly relying on *Ha'mim*, the trial court held that youth alone was not sufficient to warrant an exceptional sentence and concluded that there were "no mitigating factors here." *Id.* at 74, 76. The trial court considered the facts and concluded there was no basis for an exceptional sentence. This was a proper exercise of discretion that O'Dell may not appeal. *See* former RCW 9.94A.585(1).

---

[7] I also note that rape "'is not a common teenage vice'" that can be blamed on a lack of judgment. *Ha'mim*, 132 Wn.2d at 847 (quoting *State v. Scott*, 72 Wn. App. 207, 219, 866 P.2d 1258 (1993)). For this reason, the trial court likely rejected testimony from O'Dell's friends and family that characterized his conduct as an "honest mistake." VRP (Mar. 6, 2013) at 51; *see also id.* at 57 ("Like I said, he made a stupid mistake."), 67 ("I'm here because I'm a boy who made a mistake."). Such assertions appear flippant in the face of testimony from A.N. that O'Dell held her down, pulled off her pants and undergarments, and forcibly raped her while she told him to stop. *See* VRP (Jan. 16, 2013) at 281-84. And while force is not an element of child rape, the trial court stated at sentencing that "[A.N.] was traumatized. And that trauma showed up on Monday morning. . . . So I believe [A.N.], and I trust in the jury's decision." VRP (Mar. 6, 2013) at 75. A.N.'s family also testified as to the trauma inflicted on her. *See id.* at 23 ("[O'Dell] has made my granddaughter go through hell since that night. Sometimes she's okay, and then at other times she will revert to the age of 5 or 6."), 25 ("The nightmares. She wakes up at night crying. Her mother finds her in the closet hiding under covers, under her bed."), 26 ("And, eventually, [A.N.] had to be pulled out of school and [her mother] is now homeschooling her."), 31 ("To watch her start to become an independent young girl to a child that needs to be comforted and laid with each night, holding my hand in the car when we leave home, or needing to leave where we have gone because it's just too crowded and overwhelming for her to be there.").

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

As we held in *Ha'mim,* age alone may not form the basis for an exceptional sentence below the standard range absent evidence that age affected the defendant's capacities. Because there is no such evidence here, I would affirm the Court of Appeals.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. O'Dell*, No 90337-9
Fairhurst, J. (dissenting)

Fairhurst, J.

Johnson, J.

Owens, J.

Stephens, J.