IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 79674-7-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| JOSHUA ALEXANDER O'CONNOR, | UNPUBLISHED OPINION |
| Appellant. | |

CHUN, J. — The State charged Joshua O'Connor with attempted first degree murder, first degree robbery with a firearm allegation, and possession of an explosive device with intent to use for an illegal purpose. O'Connor pleaded guilty as charged. The trial court denied O'Connor's request for an exceptional downward sentence based on his youth and imposed 210.75 months, followed by a 60-month firearm enhancement. O'Connor appeals. We affirm.

## I. BACKGROUND

O'Connor lived with his grandparents. One night, while he was away, his grandmother discovered and read a notebook in his room. The notebook detailed O'Connor's plans to shoot and kill fellow students and teachers at his school, and then commit suicide. O'Connor's grandmother left the notebook in his room and planned to contact the police the next day. The same night, O'Connor and an accomplice robbed a convenience store at gunpoint.

Citations and pin cites are based on the Westlaw online version of the cited material.

The next day, while O'Connor was at school, his grandmother discovered a gun and what looked like two grenades in his room. She contacted the police. The police searched his room and found the gun and two grenades. They also found a nitrous oxide canister filled with gunpowder and sealed with duct tape.

The State charged O'Connor with attempted first degree murder, first degree robbery with a firearm allegation, and possession of an explosive device with intent to use for an illegal purpose. The standard range, not including a 60-month firearm enhancement, spanned from 210.75 months to 280.5 months. O'Connor pleaded guilty as charged but requested an exceptional downward sentence of 144 months based on his youthfulness. He was 18 years old at the time of the crimes.

At sentencing, a psychologist, O'Connor's former foster mother, O'Connor's sister, and his grandmother testified. They detailed the abuse and neglect O'Connor had suffered as a child at the hands of his biological mother and shared that he acted as a parental figure for his two younger sisters. The psychologist expressed hopefulness about O'Connor's potential for rehabilitation, since he had no history of violence, expressed genuine remorse for his actions, expressed happiness that he did not follow through with his plans, and blamed no one else for his actions. When asked whether he was suggesting any of O'Connor's adverse childhood experiences affected his ability to appreciate that killing was wrong, the psychologist responded as follows:

> There's no causal line of any sort between those terrible experiences he went through for years and his deciding or deciding to or deciding not to go through with the shooting. He did and would have and I

2

think did understand all along that such a thing would be wrong and legally wrong.

However, the psychologist stated that O'Connor's overall level of maturity was poor and nowhere near normal for his age at the time of the offenses. His former foster mother, sister, grandmother, and aunt also provided the court with letters in support of an exceptional mitigated sentence.

Before issuing its decision, the sentencing court stated:

Case law establishes, and the parties have agreed, that because of issues related to brain development that in appropriate cases the court can conclude that youth impaired the youth's ability to appreciate the wrongfulness of their conduct or diminish the ability to conform to the requirements of the law, thereby providing the basis for an exceptional sentence below the standard sentencing range.

It then reasoned that, while O'Connor had a "horrific upbringing," he understood the consequences of his crimes, did not act impulsively, did not show other antisocial behaviors, and did not commit his crimes under the influence of peer pressure. It concluded that his actions were not consistent with adolescent brain development and denied his request for an exceptional downward sentence. The court imposed a 210.75-month sentence with a 60-month firearm enhancement. O'Connor appeals.

## II. ANALYSIS

O'Connor argues the trial court erred in concluding that it could not impose an exceptional mitigated sentence. The State argues that the court recognized that, under changes in the law of youth sentencing, it had discretion to consider an exceptional sentence, but declined to do so. We agree with the State.

3

A court "may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of [the Sentencing Reform Act], that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. Such reasons may include a significant impairment to defendant's capacity to appreciate the wrongfulness of their conduct, or to conform their conduct to the requirements of the law. RCW 9.94A.535(1)(e).

On appeal, a defendant may challenge the legal determinations underlying the trial court's decision to deny an exceptional downward sentence. State v. McFarland, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). The trial court errs if it categorically refuses to grant an exceptional downward sentence or if it operates under the mistaken belief that it had no discretion to do so. McFarland, 189 Wn.2d at 56. But a court "that has considered the facts and concluded that there is no basis for an exceptional sentence has exercised its discretion, and the defendant may not appeal that ruling." State v. Garcia-Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

Because youthful offenders may lack the capacity to appreciate the wrongfulness of their conduct or to conform their conduct to the law, even a non-juvenile's youthfulness may constitute a mitigating factor supporting an exceptional downward sentence. State v. O'Dell, 183 Wn.2d 680, 696, 358 P.3d 359 (2015); RCW 9.9A.535(1)(e). The failure to exercise discretion constitutes abuse of discretion. O'Dell, 183 Wn.2d at 697. A court abuses its discretion if it fails to consider evidence of defendant's youthfulness as a possible ground for

an exceptional mitigated sentence. O'Dell, 183 Wn.2d at 696–97. When considering a defendant's youthfulness, the court must weigh:

> [The defendant's] age and its hallmark features, such as [their] immaturity, impetuosity, and failure to appreciate risks and consequences. It must also consider factors like the nature of [their] surrounding environment and family circumstances, the extent of [their] participation in the crime, and the way familial and peer pressures may have affected [them]. And it must consider how youth impacted any legal defense, along with any factors suggesting that the [defendant] might be successfully rehabilitated.

State v. Houston-Sconiers, 188 Wn.2d 1, 23, 391 P.3d 409 (2017) (internal quotation marks and citation omitted) (citing Miller v. Alabama, 567 U.S. 460, 477–78, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (internal quotation marks and citations omitted)). We may not reweigh the youthfulness factors considered by the sentencing court. State v. Ramos, 187 Wn.2d 420, 453, 387 P.3d 650 (2017).

O'Connor claims that the trial court failed to recognize its discretion to impose an exceptional downward sentence based on his youthfulness. He bases his claim on following statement made by the court: "Frankly, I wish in this case I could find a legal and proper basis to grant the request for an exceptional sentence below the standard range. But, based on my interpretation of the law and the facts of this case, I cannot find it's legally warranted."

But the record shows that, unlike in O'Dell, the sentencing court explicitly recognized that it could, when appropriate, impose an exceptional mitigated sentence based on a defendant's youthfulness. The court said that "in appropriate cases the court can conclude that youth impaired the youth's ability

5

to appreciate the wrongfulness of their conduct . . . thereby providing the basis for an exceptional sentence below the standard sentencing range." The court analyzed whether, based on O'Connor's youthfulness, it should impose such a sentence but decided in the negative.

The trial court, referring to entries in O'Connor's journal—in which he stated that he wanted to "kill some peers," teachers, and police officers, and that "murder is running through my mind more than ever"—concluded that he understood the consequences of his plan. The court also concluded that, because O'Connor made his detailed plans months before the date he planned to commit the shooting, he did not act impulsively. The court acknowledged that while O'Connor's journal showed antisocial thoughts, none of his letters of support showed any significant antisocial behavior and that he had no criminal record. It also acknowledged that while a friend may have given him the idea to commit a school shooting, O'Connor was not in contact with that friend during the time he developed his plan. Thus, it concluded that he made his decisions outside the influence of peer pressure. And while the court recognized that O'Connor had a "horrific upbringing," it noted that other young people who faced similar challenges do not typically take substantial steps towards committing mass murder. The court also noted that O'Connor's psychologist claimed there was no causal link between his upbringing and his crimes. When it denied his request, the court did not explicitly consider O'Connor's potential for rehabilitation, but the court did hear testimony about his rehabilitation potential

6

and elicited questions from the psychologist about such potential.[1] While the court did not explicitly consider his age as it related to his crime, it was aware of his age and considered how the crime related to the hallmark features of youth.

Thus, the sentencing court did not fail to recognize its discretion; instead, it considered the facts and concluded there was no basis for an exceptional downward sentence.[2]

Statement of Additional Grounds

In his Statement of Additional Grounds (SAG), O'Connor argues that the sentencing court failed to consider his age, the hallmark features of youth, and the retirement age and that it focused only on the severity of his non-homicide crimes. As discussed above, and contrary to O'Connor's assertion, the court properly considered his age and the hallmark features of youth as related to his crime. O'Connor cites only non-applicable federal law in support of his assertion that a sentencing court must consider the national age of retirement before sentencing a juvenile; we also note that such law apparently applies only to juveniles. Finally, upon review of the record, we determine that, contrary to his assertion, the trial court also considered the severity of his attempted murder

---

[1] O'Connor also claims the sentencing court improperly weighed some of the qualities of his youthfulness, such as his potential for rehabilitation, the role of O'Connor's upbringing in his crimes, and the role of peer pressure in his crimes. But we may not reweigh these factors. See Ramos, 187 Wn.2d at 453.

[2] O'Connor also claims that, under Houston-Sconiers, the trial court could have ordered that the firearm enhancement for the robbery charge run concurrently to the rest of his sentence. But the holding in Houston-Sconiers applies only to juveniles, and O'Connor was an adult when he committed robbery. 188 Wn.2d at 34; see also State v. Brown, No. 79954-1-I (Wash. May 18, 2020) (firearm enhancements must run consecutively for adults).

charge in weighing his request for an exceptional downward sentence.  Thus, we reject the claims raised in the SAG.

        We affirm.

_____
Chun, J.

WE CONCUR:

_____          _____
Dwyer, J.                                                        Dwyer, J.