**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 83366-9-I (consolidated with No. 83367-7-I) |
| Respondent, | |
| v. | DIVISION ONE |
| MAURICE C. KUIT, | UNPUBLISHED OPINION |
| Appellant. | |

MANN, J. — Maurice Kuit pleaded guilty to first degree voyeurism and failure to register as a sex offender. The sentencing court imposed the low-end standard-range sentences of 43 months on each conviction, to run concurrently. The court imposed an additional 36 months of community custody for each conviction. Kuit appeals and argues that the court erred in: (1) imposing confinement and community custody that exceeds the statutory maximum for the offense and (2) not considering an exceptionally mitigated sentence based on age. The State concedes the first issue. We remand the voyeurism conviction to the sentencing court to reduce the term of community custody or resentence Kuit. We otherwise affirm.[1]

---

[1] Kuit filed two separate appeals of his sentences, decided at the same sentencing hearing. We consolidated the appeals under No. 83366-9-I. The secondary appeal's original case number is 83367-7-I.

I.

On July 27, 2020, Kuit pretended to be a doctor and asked a female employee of the University of Washington Medical Center to assist him with writing some telephone numbers down due to his poor eyesight. Kuit led the employee into an unoccupied room. As the employee began recording the telephone numbers, Kuit closed the door, laid on the floor, and looked up the woman's dress. The employee yelled, "[w]hat are you doing?" Kuit then got off the floor and left the room. A security guard recognized Kuit in video surveillance as a former patient and the employee identified Kuit in a photo array.

Kuit was previously convicted of voyeurism for a similar ruse at a Seattle hospital in 2002. As a result of the conviction, Kuit was required to register as a sex offender. Kuit failed to register after January 2020. Kuit had prior convictions for failure to register.

Kuit pleaded guilty in King County Superior Court to first degree voyeurism and failure to register as a sex offender. Kuit had a maximum offender score for both offenses due to his prior voyeurism conviction and multiple failure to register convictions.

The State sought the low-end standard range sentences of 43 months on each conviction, to run concurrently. Kuit sought an exceptional sentence downward due to his age and illness. The court imposed concurrent sentences of 43 months and 36 months of community custody on each conviction.

II.

Kuit argues that the court erred in imposing confinement and community custody that exceeds the statutory maximum for voyeurism in the first degree. The State concedes and we agree.

"The term of community custody . . . shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021." RCW 9.94A.701(10). To remedy an excessive sentence, we either remand to the trial court to reduce the community custody term or resentence the conviction consistent with RCW 9.94A.701(9). State v. Boyd, 174 Wn.2d 470, 473, 275 P.3d 321 (2012).

Voyeurism in the first degree is a class C felony with a maximum penalty of 60 months. RCW 9A.20.021(1)(c). Kuit's 43-month prison term and 36-month community custody term create a combined sentence of 79 months. We remand the voyeurism conviction to the sentencing court to reduce community custody or resentence Kuit consistent with RCW 9A.20.021.

III.

Kuit argues that the court abused its discretion in failing to consider an exceptional mitigated sentence. We disagree.

Kuit argued that his age, sexual deviancy, and recent melanoma diagnosis serve as justification to give him an exceptionally lenient sentence. And that his "unchecked impulsiveness that has become manifested in an addiction to sexual offenses" necessitates leniency rather than incarceration. Kuit relied on the Sentencing Reform

Act's (SRA) statement that listed mitigating circumstances "are illustrative only and are not intended to be exclusive reasons for exceptional sentences."[2]

The State countered, noting that contrary to Kuit's claims of cognitive deficiencies, he carefully orchestrated his voyeurism scheme and his failure to register included intentional evasion of the law. The State opined that Kuit's advanced age and poor health did not present a statutory or nonstatutory reason to depart from the standard range.

The sentencing court followed the State's recommendation, explaining:

> So I will follow the State's sentencing recommendation at the low end of the standard range. This is not an appropriate case for an exceptional down. This is a case where Mr. Kuit planned this crime in the same way that he had an earlier crime. He had a situation in which he doesn't have a crime-related reason why there should be an exceptional downward departure in this case. The reasons that are given are essentially personal factors that are not an appropriate consideration here. Even if it does meet the standards, this is just not an appropriate case for an exceptional down, so I'm going to stick with the low end of the standard range.

"A sentence within the standard sentence range, under RCW 9.94A.510 or 9.94A.517, for an offense shall not be appealed." RCW 9.94A.585. This is so, absent legal error or mistaken belief that the court could not impose a nonguideline sentence. State v. McFarland, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). Our Supreme Court in McFarland explained, "[w]hile no defendant is entitled to challenge a sentence within the standard range, this rule does not preclude a defendant from challenging on appeal the underlying legal determinations by which the sentencing court reaches its decision;

---

[2] Sentencing Reform Act of 1981, ch. 9.94A RCW.

every defendant is entitled to have an exceptional sentence actually considered." 189 Wn.2d at 56.

The SRA "structures, but does not eliminate, discretionary decisions affecting sentences." RCW 9.94A.010. The court must impose a sentence within the SRA's provided range, unless it finds a mitigating or aggravating factor that provides a "substantial and compelling reason" to depart from that range and impose an exceptional sentence instead. State v. Thomason, 199 Wn.2d 780, 787, 512 P.3d 882 (2022). The SRA provides a nonexclusive list of mitigating circumstances to support an exceptional sentence downward. RCW 9.94A.535(1). But the listed factors are "illustrative only and are not intended to be exclusive reasons for exceptional sentences." RCW 9.94A.535(1).

To determine if a nonstatutory mitigating factor can support an exceptional sentence, we use the two-part "Grewe test." Thomason, 199 Wn.2d at 789; State v. Grewe, 117 Wn.2d 211, 813 P.2d 1238 (1991). Under Grewe, the factor cannot support an exceptional sentence, (1) if the legislature necessarily considered that factor when it established the standard range and (2) unless it is substantial and compelling enough to distinguish the crime in question from others in the same category. Thomason, 199 Wn.2d at 789. Additionally, the mitigating factors cannot rely on an element that does not relate to the crime or previous record of the defendant. State v. Law, 154 Wn.2d 85, 103, 110 P.3d 717 (2005). Accordingly, the factor "must relate to the crime and make it more, or less, egregious." Law, 154 Wn.2d 85 at 98 (citing State v. Fowler, 145 Wn.2d 400, 404, 38 P.3d 335 (2002)).

The sentencing court considered Kuit's reasons for an exceptional sentence downward. The court determined that the factors Kuit offered, age and illness,[3] were personal and did not differentiate the crime. "[Kuit] had a situation in which he doesn't have a crime-related reason why there should be an exceptional downward departure in this case." The court added, that even if the factors were crime-related, "this is just not an appropriate case for an exceptional down." In essence, even if the factors were crime-related, they were not substantial and compelling enough to differentiate the crime from others. Thomason, 199 Wn.2d at 789.

The court did not err in imposing the low-end standard range sentence. It was not required to accept Kuit's mitigating factors. Further, the court did not express a lack of discretion, rather, it considered the factors and exercised its discretion, declining to impose an exceptional sentence.

We remand the voyeurism conviction to the sentencing court to reduce the term of community custody or resentence Kuit. We otherwise affirm.[4]

---

[3] Kuit also argues that the court was required to consider his old age as a mitigating factor under State v. O'Dell, 183 Wn.2d 680, 358 P.3d 359 (2015). In O'Dell, our Supreme Court held that "a defendant's youthfulness can support an exceptional sentence below the standard range applicable to an adult felony defendant, and that the sentencing court must exercise its discretion to decide when that is." 183 Wn.2d at 698-99. The O'Dell court premised its holding on the neurological distinction between adult and adolescent offenders. 183 Wn.2d at 692. The holding does not support the same distinction for advanced age offenders.

[4] Kuit submitted a statement of additional grounds (SAG) to this court. We decline to address the SAG as it was testimonial in nature and otherwise void of legal argument.

Mann, J.

WE CONCUR:

Smith, A.C.J.