IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36690-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| PEDRO CADENAS, | ) | |
| a/k/a PEDRO CARDENAS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Pedro Cadenas appeals after being convicted of first degree murder, second degree unlawful possession of a firearm, and attempted theft of a motor vehicle. We affirm his convictions and sentence, but remand for the trial court to exercise its discretion whether to waive community custody supervision fees.

FACTS

Manual Molina was shot and killed by someone who tried to steal his sport utility vehicle. A police investigation concluded that Mr. Molina's assailant was Pedro Cadenas, then 17 years old. The State charged Cadenas with first degree murder, or alternatively second degree murder, second degree unlawful possession of a firearm, and

attempted theft of a motor vehicle. In addition, the State alleged the firearm enhancement with respect to the murder charges.

The matter proceeded to trial. During jury selection, defense counsel questioned venire juror 6 about something disclosed on his juror questionnaire.

> Q. . . . We noticed in the questionnaire . . . that there was some trauma in the past with your mother being murdered and raped. That's pretty serious. That's why we're asking you questions outside of the jury . . . . We're just wondering how has that affected, you, and would it affect you to go through a murder-type trial?
> A. Well . . . I don't know for sure. You know, since yesterday [I] certainly have been reflecting on that period of time in my life. But, you know, I don't know how emotional or whatever I'd get about it, but I think I'd be relatively stable.
> Q. So you don't feel like it would distract you in any way?
> A. Well, that's the part that I'm not really clear on if—if, yeah. I don't think it would, but you never know.
> Q. If it did distract you, would you be willing to bring it to the Court's attention?
> A. Sure.
> . . . .
> Q. And then you also indicated in your questionnaire that you feel like you could not be fair and impartial in this case regarding your history with your mother's trauma and those types of things. So to balance that out obviously you thought about it last night. Has your opinion changed?
> A. Well, I can't say it's changed. It's basically—I put that down just as a flag, if nothing else, because I think it would be OK, but, you know, I don't want to go with the pretense that—I'll definitely, you know, be fine and wouldn't have some, you know, it wouldn't affect me. I don't think it would, but, you know, I don't know for sure.

Report of Proceedings (RP) (Nov. 14, 2018) at 42-43.

2

In response to a question from the State, the venire juror disclosed that his mother had been raped and murdered in 1980. After the parties said they had no further questions, the trial court excused the prospective juror from the courtroom.

Defense counsel challenged venire juror 6 for cause. The trial court denied the challenge. It explained, "Listening to the statements, the testimony of the prospective juror this morning, the Court does not believe that it's been established that he could not be fair and impartial in this case." RP (Nov. 14, 2018) at 45-46. Ultimately, defense counsel exercised only four of the allowed eight peremptory challenges and permitted venire juror 6 to serve on the jury.

The trial concluded with the jury finding Cadenas guilty of first degree murder, second degree unlawful firearm possession, and attempted theft of a motor vehicle. It also found that Cadenas was armed with a firearm during the commission of the murder.

At sentencing, the trial court considered the risk assessment report from a community corrections officer (CCO), two statements by the victim's family members, a letter from Cadenas's mother, and the parties' arguments. The CCO's report discussed Cadenas's uncooperative attitude and his extreme disruptive behavior throughout his incarceration. The mother's letter discussed her son's grievous childhood, including how her own incarceration and deportation left her then five-year-old son without a parent when his father was killed.

The State acknowledged that Cadenas's youth normally would be a mitigating factor, but urged the court to sentence him to the upper end of the standard range. In making its argument, the State focused on Cadenas's lack of remorse and behavior during incarceration. The State argued these factors signaled that Cadenas lacked an amenability to change.

Defense counsel urged the court to sentence Cadenas to the bottom end of the standard range. Counsel emphasized the many hardships faced by Cadenas throughout his life. He discussed scientific literature that explained that teenagers did not have fully formed brains, resulting in an inability to engage in adult decision making. He also discussed how Cadenas might mature and behave more responsibly once he was given the structure and rehabilitative programs at the Department of Corrections.

Defense counsel did not discuss the court's authority, when sentencing a defendant who committed a crime as a juvenile, to sentence below the standard range or to waive the 60-month firearm enhancement.

The court noted it "had a chance to consider this matter with some length," and noted it had "certainly taken into consideration" Cadenas's youth. RP (Mar. 19, 2019) at 40-41. The court also noted "there is a great deal of research regarding adolescent brain development, and the lack thereof, and how that impacts an individual's abilities to make

4

decisions and impulse control, things of that nature. So that's given me a great deal of pause as to what is the appropriate sentence" in this case. RP (Mar. 19, 2019) at 41.

The court noted that Cadenas, during trial and sentencing, showed a "smugness" and "almost a total absence of any remorse." RP (Mar. 19, 2019) at 41. The trial court imposed a sentence of 434 months, which was the top of the standard range. It also found Cadenas indigent for purposes of appeal and waived all discretionary costs.

Cadenas timely appealed to this court.

ANALYSIS

Cadenas makes four arguments on appeal. We address them in order.

1.    JUROR BIAS

Cadenas contends the trial court violated his right to an impartial jury. He argues venire juror 6 was biased and should have been removed for cause.

"Criminal defendants have a federal and state constitutional right to a fair and impartial jury." *State v. Irby*, 187 Wn. App. 183, 192, 347 P.3d 1103 (2015). Allowing a juror who is biased to sit on the jury violates this right. *Id.* at 193. Actual bias means "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2).

Where a defendant fails to use all peremptory challenges and allows a purportedly biased juror to be seated on the jury, the defendant waives any error relating to the trial court's refusal to remove the juror for cause. *State v. Munzanreder*, 199 Wn. App. 162, 179-80, 398 P.3d 1160 (2017). Here, Cadenas retained four of his eight preemptory challenges at the end of jury selection. He chose not to use any of his remaining challenges and permitted venire juror 6 to be seated on the jury. Because of this, he waived any challenge to the trial court's refusal to remove juror 6 for cause.

2. FAILURE TO MEANINGFULLY CONSIDER YOUTH AT SENTENCING

Citing *In re Personal Restraint of Ali*, 196 Wn.2d 220, 474 P.3d 507 (2020), Cadenas contends the trial court erred by not taking into account his youth at sentencing. We disagree. The trial court explicitly noted its authority to take Cadenas's youth into account.

Citing *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015) and other authorities, Cadenas argues the trial court was required to *meaningfully* consider youth as a mitigating circumstance. We agree.

Cadenas then argues that a meaningful consideration requires an on-the-record discussion and application of three youthful characteristics—(1) impetuousness and underdeveloped sense of responsibility, (2) increased susceptibility to negative external influences, and (3) unformed character and statistically higher prospects of report. We

disagree that *O'Dell* requires this. Rather, *O'Dell* says that "a trial court should consider [lay testimony] in evaluating whether youth diminished a defendant's culpability." *Id.* at 697.

This is what the trial court did. Both sides offered lay testimony on how youth contributed to Cadenas's crimes, and the trial court considered this evidence. It nevertheless imposed a top of the standard range sentence.

3.      INEFFECTIVE ASSISTANCE OF COUNSEL

Cadenas argues his trial counsel was ineffective for not citing *O'Dell* and other controlling authorities that authorize the trial court to sentence him below the standard range and even waive the otherwise mandatory firearm enhancement.

To show ineffective assistance of counsel, a defendant must show that (1) counsel's representation was deficient and (2) the deficiency was prejudicial. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). We need not address both deficient performance and resulting prejudice if a defendant makes an insufficient showing on either prong. *State v. Gomez Cervantes*, 169 Wn. App. 428, 434-35, 282 P.3d 98 (2012).

The trial court did not indicate any confusion about the law or its own authority to impose an exceptional sentence below the standard range. In fact, the trial court acknowledged its authority to impose a lesser sentence on account of Cadenas's youth

and discussed considerations expressed in *O'Dell*. We presume the trial court was familiar with *O'Dell* and similar authorities and knew it could even waive the 60-month firearm enhancement.

Despite knowing that it could impose a lesser sentence on account of Cadenas's youth, it imposed the top of the standard range sentence. We are confident that defense counsel's failure to cite cases and discuss the law, which the trial court presumably understood, did not prejudice Cadenas. Our conclusion might be different had the trial court imposed a bottom of the standard range sentence.

4.    DISCRETIONARY SUPERVISION FEES

Cadenas contends the trial court erred in ordering him to pay supervisory fees for community custody. He argues these fees are a discretionary cost that may not be imposed on an indigent defendant such as himself. We disagree.

In *State v. Spaulding*, No. 53253-1-II, slip op. at 8-9 (Wash. Ct. App. Nov. 17, 2020), https://www.courts.wa.gov/opinions/pdf/D2%2053253-1-II%20Published%20Opinion.pdf, Division Two of this court held that a sentencing court is not prohibited by RCW 10.01.160(3) from imposing community supervision fees on an indigent defendant. *Spaulding* recognizes that RCW 10.01.160(3) prohibits discretionary *costs* from being imposed on an indigent defendant. *Spaulding* then notes that RCW 10.01.160(2) defines "cost" as an expense incurred by the State to prosecute a

8

No. 36690-1-III
*State v. Cadenas*

defendant, to administer a deferred prosecution program, or to administer pretrial supervision. *Id.* at 9. *Spaulding* correctly concludes that community supervision fees do not qualify as a "cost" under that definition. *Id.*

Nevertheless, RCW 9.94A.703(2)(d) explicitly permits a trial court to waive community custody supervision fees. Here, the trial court expressed its desire to waive all discretionary costs. Yet the aspect of the sentence that orders payment of community custody supervision fees is buried in the middle of a list of conditions in preprinted text. We suspect the trial court intended to waive these fees and remand to allow the trial court to do so at its discretion.

Affirmed, but remanded to consider waiving community custody supervision fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Korsmo, A.C.J.

Fearing, J.

9