# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46002-5-II |
| Respondent, | PUBLISHED OPINION |
| v. | |
| GUADALUPE SOLIS-DIAZ, | |
| Appellant. | |

BJORGEN, C.J — Guadalupe Solis-Diaz, tried and sentenced as an adult for crimes committed while a juvenile, appeals his sentence of 1,111 months (92.6 years) in prison on six counts of first degree assault with firearm enhancements, one count of drive-by shooting, and one count of unlawful possession of a firearm.  Solis-Diaz argues, and the State concedes, that the sentencing court erred by refusing to consider whether application of the multiple offense policy warranted an exceptional downward sentence.  He also argues that the trial court erred by refusing to consider his youth as a mitigating factor and by imposing a 1,111-month prison term on a juvenile offender in violation of constitutional prohibitions on cruel and unusual punishment.  Finally, Solis-Diaz asks us to disqualify the sentencing judge from hearing the case

if we remand for resentencing, arguing that the judge's statements at the previous sentencing hearing created the appearance of bias.

We agree with Solis-Diaz that the sentencing court erred by failing to consider an exceptional sentence below the standard range in mitigation of consecutive sentences imposed under the multiple offense policy. We also hold that the sentencing court erred by failing to consider Solis-Diaz's age as a basis for a sentence below the standard range. Accordingly, we vacate Solis-Diaz's sentence and remand for resentencing. On remand, the sentencing court must conduct a meaningful, individualized inquiry into whether Solis-Diaz's youth should mitigate his sentence. Because we remand on other grounds, we do not consider whether Solis-Diaz's sentence violates the constitutional prohibitions on cruel and unusual punishment. We decline to mandate the sentencing judge's disqualification, but we acknowledge that Solis-Diaz is free to move for disqualification on remand.

FACTS

Solis-Diaz was 16 years old in 2007, when he participated in a gang related drive-by shooting in Centralia. He was charged with six counts of first degree assault, each with a firearm sentencing enhancement; one count of drive-by shooting; and one count of second degree unlawful possession of a firearm. He was tried as an adult pursuant to former RCW 13.04.030(1)(e)(v)(A) (2005) and former RCW 9.94A.030(46)(v) (2006). The jury found him guilty on all counts, and the trial court imposed a standard-range sentence of 1,111 months in prison. Judge Nelson Hunt presided over the original sentencing.

Solis-Diaz brought a personal restraint petition challenging his sentence in this court. In an unpublished opinion, we reversed the sentence for ineffective assistance of counsel and

remanded for resentencing. *In re Pers. Restraint of Diaz*, 170 Wn. App. 1039, 2012 WL

5348865, *1 (2012). Among the grounds for concluding that Solis-Diaz received ineffective

assistance was his counsel's failure to properly inform the trial court that Solis-Diaz's case was

automatically declined to adult court. *Id*. We did not decide whether a 1,111-month fixed term

sentence violated the federal constitutional prohibition of cruel and unusual punishment or the

state constitutional prohibition of cruel punishment.

Judge Hunt also presided over the resentencing. Solis-Diaz requested an exceptional

downward sentence on grounds that the multiple offense policy of the Sentencing Reform Act of

1981[1] (SRA) operated to impose a clearly excessive sentence and that Solis-Diaz's age indicated

diminished capacity to understand the wrongfulness and consequences of his actions. Judge

Hunt denied the request and again imposed a standard-range sentence of 1,111 months in prison.

In making his ruling, Judge Hunt "ha[d] some comments to make about the finding that

[Solis-Diaz's counsel at the original sentencing] was ineffective." Report of Proceedings (RP) at

34. He called the reasoning underlying our holding

> an insult to all the trial judges in this state. To postulate that a judge would be so
> ignorant, lazy or stupid as to not know or inquire at some point why this 17-year-
> old was in adult court is incredible to me.
> . . . .
> In my case, it's particularly insulting as [counsel] well understood my
> background, which consists of 17 years in prosecution, nine years in private
> practice, . . . and at the time three years on the bench.
> . . . .
> [I]t is simply ludicrous to think that I would not have known what [counsel] meant
> when he said the defendant was . . . auto-declined.

---

[1] Chapter 9.94A RCW.

RP at 34-35. Judge Hunt then outlined at length his reasons for imposing a sentence at the top of the standard range:

> The sentence is precisely what the Legislature intended and is frankly the only result which would withstand a legal analysis.
>  . . . .
> I believe the original sentence accurately reflects what the legislative intent for this situation is, and there are no substantial and compelling reasons to deviate from the standard range.
>
> [T]he legislative intent is clear, and under the Sentencing Reform Act, punishment and accountability are the primary foci of sentencing, and serious violent offenses will be punished severely, particularly if there are multiple counts. Older teenagers will be treated as adults. And, finally, if you commit serious violent offenses while armed with a firearm, you'll receive a severe sentence.
>
> One of the purposes of sentencing is the message that is sent to others contemplating a similar offense.
> . . . .
>      I don't know where the people live who made the claim that assaults in Lewis County have remained relatively steady, but for those of us who do live here, we know this. There had been many similar incidents of gang-related violence in Centralia with the use of firearms. From the day this sentence was pronounced, there have been no similar crimes in Centralia. Gang-related violence with firearms ha[ve] been virtually eliminated from Centralia.

RP at 37-44.

Judge Hunt rejected Solis-Diaz's request to impose an exceptional sentence below the standard range. He explained that under an earlier, now reversed, decision of Division Three of our court, *State v. Graham* (*Graham* I), 178 Wn. App. 580, 314 P.3d 1148 (2013), *rev'd*, 181 Wn.2d 878 (2014), he had no authority to impose an exceptional downward sentence on multiple offense policy grounds because Solis-Diaz's convictions were for serious violent offenses, as defined in the SRA. He similarly stated that he believed *State v. Ha'mim*, 132 Wn.2d 834, 847, 940 P.2d 633 (1997), and *State v. Scott*, 72 Wn. App. 207, 219, 866 P.2d 1258 (1993), *aff'd sub nom.*, *State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995), prohibited him from considering

No. 46002-5-II

Solis-Diaz's youth as an indicator of diminished capacity.

Solis-Diaz appeals his sentence.

ANALYSIS

I. CONSIDERATION OF MITIGATING FACTORS:  MULTIPLE OFFENSE POLICY

Solis-Diaz argues that the sentencing court erred by failing to consider as a mitigating factor the excessive nature of the standard range sentence produced by application of the SRA's multiple offense policy in this case.  The State concedes that the sentencing court erred in refusing to consider this matter and we accept the concession.

We review a sentencing court's decision to deny an exceptional sentence to determine whether it failed to exercise discretion or abused its discretion by ruling on an impermissible basis.  *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002).  Where the sentencing court fails to exercise its discretion because it incorrectly believes it is not authorized to do so, it abuses its discretion.  *State v. O'Dell*, 183 Wn.2d 680, 696-97, 358 P.3d 359 (2015); *see also State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005) (noting that a sentencing court abuses its discretion by categorically refusing to consider an authorized and requested exceptional sentence).

Under the SRA, a sentencing court must generally sentence a defendant within the standard range.  *State v. Graham* (*Graham* II), 181 Wn.2d 878, 882, 337 P.3d 319 (2014).  Pursuant to the SRA's multiple offense policy, standard range sentences for multiple serious

violent offenses are to be served consecutively. RCW 9.94A.589(1)(b).[2]  However, "[t]he court may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1).[3]  One such mitigating circumstance exists if "[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter, as expressed in RCW 9.94A.010." RCW 9.94A.535(1)(g).[4]  When the resulting set of consecutive sentences is so clearly excessive under the circumstances that it provides "'substantial and compelling reasons'" for an exceptional sentence below the standard range, the sentencing court may grant that exceptional sentence. *Graham* II, 181 Wn.2d at 885 (quoting RCW 9.94A.535).

The sentencing court in this case declined to consider an exceptional sentence below the standard range because it believed that the SRA's multiple offense policy could not be the basis for mitigation of resulting consecutive sentences. It based its belief on Division Three's opinion in *Graham* I. In that case, the court held that operation of the multiple offense policy to serious violent offenses was not a proper basis for an exceptional sentence. 178 Wn. App. at 590.

However, after Solis-Diaz's resentencing our Supreme Court reversed the decision in *Graham* I and clarified that "a sentencing judge may invoke .535(1)(g) to impose exceptional sentences both for multiple violent and nonviolent offenses scored under .589(1)(a) and for multiple serious violent offenses under .589(1)(b)." *Graham* II, 181 Wn.2d at 885. Therefore,

---

[2] RCW 9.94A.589 was amended in 2015. This amendment did not affect subsection (1)(b).

[3] RCW 9.94A.535 was amended in 2015. This amendment did not affect subsection (1).

[4] RCW 9.94A.535 was amended in 2015. This amendment did not affect subsection (1)(g).

even though the sentencing court based its decision not to exercise discretion on controlling case law at the time of sentencing, the fact that our Supreme Court reversed that case law and clarified the underlying statutory provisions rendered unlawful the basis for the sentencing court's decision. Therefore, we must vacate Solis-Diaz's sentence and remand for resentencing. *See O'Dell*, 183 Wn.2d at 697; *In re Pers. Restraint of Greening*, 141 Wn.2d 687, 694, 9 P.3d 206 (2000). At the new sentencing, the trial court can consider whether Solis-Diaz's sentence was clearly excessive due to operation of the multiple offense policy.

## II. YOUTH AS A MITIGATING FACTOR

Our Supreme Court's recent decision in *O'Dell* provides a separate reason why the trial court erred in failing to consider an exceptional sentence downward. Like *Graham* II, *O'Dell* issued after the resentencing of Soliz-Diaz. O'Dell was convicted of rape committed just after his 18th birthday. At sentencing, the trial court ruled that it could not consider O'Dell's age as a mitigating circumstance under *Ha'mim*, 132 Wn.2d 834, and imposed a standard range sentence of 95 months. *O'Dell*, 183 Wn.2d at 683.

The Supreme Court disagreed, holding that

in light of what we know today about adolescents' cognitive and emotional development, we conclude that youth may, in fact, "relate to [a defendant's] crime," [*Ha'mim*, 132 Wn.2d at 847] (quoting RCW 9.94A.340); that it is far more likely to diminish a defendant's culpability than this court implied in *Ha'mim*; and that youth can, therefore, amount to a substantial and compelling factor, in particular cases, justifying a sentence below the standard range.

*O'Dell*, 183 Wn.2d at 695-96. In its analysis, the court disapproved of *Scott*, 72 Wn. App. at 219, an opinion from Division One of our court indicating that youthful incapacity extends only to "common teenage vice[s]," but also affirmed that youth alone does not per se indicate such incapacity. *Id.*; *see also Ha'mim*, 132 Wn.2d at 847. The Supreme Court concluded that the trial

7

court abused its discretion by improperly declining to exercise that discretion to consider

O'Dell's youth. *O'Dell*, 183 Wn.2d at 697. The court accordingly remanded for a new

sentencing hearing, directing the trial court to consider whether youth diminished O'Dell's

culpability. *Id*.

The same logic and policy that led the Supreme Court to require the consideration of the

youth of a young adult offender would apply with magnified force to require the same of Solis-

Diaz, who committed his crimes while a juvenile. As did the trial court in *O'Dell*, the trial court

here decided that under *Ha'mim* it could not consider the defendant's youth as a mitigating factor

in sentencing. As did the trial court in *O'Dell*, the trial court here abused its discretion in

refusing that consideration. Our Supreme Court's analysis in *O'Dell* compels the same result:

reversal of Solis-Diaz's sentence and remand for a new sentencing hearing to meaningfully

consider whether youth diminished his culpability. *O'Dell*, 183 Wn.2d at 697.

### III. THE NATURE OF THE INQUIRY ON RESENTENCING

We conclude above that the sentencing court erred in two ways: by failing to consider

whether Solis-Diaz's sentence was clearly excessive due to operation of the multiple offense

policy and by failing to meaningfully consider whether youth diminished his culpability under

*O'Dell*. Our Supreme Court's analysis in *O'Dell* informs how the sentencing court is to consider

Solis-Diaz's youth in making these evaluations.

The court in *O'Dell* recognized that youth might be relevant to one of the mitigating

factors listed in current RCW 9.94A.535: an impairment of the defendant's "[]capacity to

appreciate the wrongfulness of his conduct or [to] conform [his or her] conduct to the

requirements of the law." 183 Wn.2d at 697. *O'Dell* acknowledged that the United States

Supreme Court has identified several different effects of youth on the capacity and culpability of juvenile offenders, arising in the context of constitutional prohibitions against cruel and unusual punishment. *Id.*; *see also Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 2467, 183 L. Ed. 2d 407 (2012); *Graham v. Florida*, 560 U.S. 48, 68, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); *Roper v. Simmons*, 543 U.S. 551, 574, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). Recognition of these effects stemmed from developments in the fields of psychology and neuroscience showing "'fundamental differences between juvenile and adult minds'—for example, in 'parts of the brain involved in behavior control.'" *Miller*, 132 S. Ct. at 2464 (quoting *Graham*, 530 U.S. at 89-90). The Court noted that these differences may lead to impulsive decision making, *Roper*, 543 U.S. at 569, may decrease a juvenile's ability to resist harmful influences and conform to the requirements of the law, *id.* at 571, and may make it more likely that a juvenile offender will reform his life, *Miller*, 132 S. Ct. at 2465. Our Supreme Court in *O'Dell* stated that the studies underlying *Miller*, *Roper* and *Graham* "establish a clear connection between youth and decreased moral culpability for criminal conduct." 183 Wn.2d at 695.

The effects of youth on capacity and culpability are part of a multifaceted whole. In juveniles "'[a] lack of maturity and an underdeveloped sense of responsibility . . . often result in impetuous and ill-considered actions and decisions.'" *Roper*, 543 U.S. at 569 (quoting *Johnson v. Texas*, 509 U.S. 530, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993)). Similarly, "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." *Id.*; *see also Thompson v. Oklahoma*, 487 U.S. 815, 835, 108 S. Ct. 2687, 101 L. Ed. 2d 702 (1988) ("Inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more

apt to be motivated by mere emotion or peer pressure than is an adult."). Further, juveniles exhibit "vulnerability and comparative lack of control over their immediate surroundings" and therefore have "a greater claim than adults to be forgiven for failing to escape negative influences." *Roper*, 543 U.S. at 570. The "character of a juvenile is not as well formed as that of an adult," so "it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character." *Id.* These scientific findings and their endorsement by the high courts of both the United States and Washington compel the same conclusion: a sentencing court's evaluation of a particular juvenile offender's circumstances must at least extend to an individualized assessment of each of these potential effects of youth.

In short, a sentencing court must take into account the observations underlying *Miller*, *Graham*, *Roper*, and *O'Dell* that generally show among juveniles a reduced sense of responsibility, increased impetuousness, increased susceptibility to outside pressures, including peer pressure, and a greater claim to forgiveness and time for amendment of life. *O'Dell*, 183 Wn 2d at 695-96. Against this background, the sentencing court must consider whether youth diminished Soliz-Diaz's culpability and make an individualized determination whether his "capacity to appreciate the wrongfulness of his conduct or [to] conform that conduct to the requirements of the law" was meaningfully impaired. *O'Dell*, 183 Wn.2d at 696.[5]

A sentencing court's inquiry into the individual circumstances of a particular juvenile offender should take into account that offender's level of sophistication and maturity. *See*

---

[5] We do not reach the extent of the trial court's duty if the defendant fails to present needed evidence.

*O'Dell*, 183 Wn.2d at 697. Evidence suggesting that the offender thought and acted like a juvenile may indicate that the offender's culpability was less than that necessary to justify imposition of a standard range sentence. *See id.* Similarly, evidence that the offender exhibits growing maturity and would benefit from an opportunity to rehabilitate his life may indicate that a lesser sentence will better accomplish the State's penological goals. *See id.*

Consistently with *O'Dell*, we direct the sentencing court in this case to fully and meaningfully consider Solis-Diaz's individual circumstances and determine whether his youth at the time he committed the offenses diminished his capacity and culpability. If the court determines that his youth did so diminish his capacity and culpability, it must consider whether an exceptional sentence below the standard range is justified based on youth. *O'Dell*, 183 Wn.2d at 696.

IV. DISQUALIFICATION OF JUDGE HUNT

Solis-Diaz argues that Judge Hunt should be disqualified from presiding over the resentencing proceedings. We decline to disqualify Judge Hunt, although Solis-Diaz is free to move for disqualification on remand.

Under the federal and state constitutions, a criminal defendant has the right to be tried and sentenced by an impartial court. U.S. CONST., amends. VI, XIV; WASH. CONST. art. I, § 22. Even the appearance of partiality can be grounds for disqualification of a judge. *State v. Gamble*, 168 Wn.2d 161, 187, 225 P.3d 973 (2010). "Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial and neutral hearing." *Id.* To establish grounds for

disqualification under the doctrine, a party must show actual or potential bias. *Id*. at 187-88; *State v. Lundy*, 176 Wn. App. 96, 109, 308 P.3d 755 (2013).

However, the appearance of fairness doctrine generally is not grounds for preemptive disqualification of a judge by a remanding appeals court. *State v. McEnroe*, 181 Wn.2d 375, 386, 333 P.3d 402, *remanded*, 2014 WL 10102380 (Wash. 2014). A party usually must move before the trial court to disqualify the judge to which its case has been assigned, so the judge is allowed the first opportunity to consider recusal and the parties can develop an adequate record on the issue of disqualification. *Id*. at 387. Reassignment by a remanding court is proper only where

> the trial judge will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue.

*Id*. (footnotes omitted).

According to Solis-Diaz,

> Judge Hunt's extremely intemperate remarks at the sentencing hearing demonstrate that he would reasonably be expected upon remand to have substantial difficulty in putting out of his mind his previously expressed views or findings determined to be erroneous.

Br. of Appellant at 39. Solis-Diaz argues that Judge Hunt's remarks indicated a general refusal to accept the mandate of this court. However, none of Judge Hunt's comments indicated that he would not accept or follow our mandate following this appeal. Instead, his comments expressed personal umbrage toward this court for its reasoning in ordering the previous resentencing. Whether or not these comments were inappropriate, we do not hold that they require disqualification on remand.

12

Judge Hunt also stated that "[t]rial courts are not to impose their own feelings on the standard range sentences, as that is what the Legislature has determined they shall be." RP at 51. This view could reflect a general bias toward rejecting exceptional downward sentences. Judge Hunt further stated that

> [t]his sentence was exactly what the Legislature intended for crimes such as this. I would not have given a mitigated sentence had I known about the information that [was not presented at the original sentencing]. . . . I already knew it, and I imposed the sentence I did being fully informed of the legal consequences of doing so.

RP at 53. Read in isolation, these comments seem to indicate that Judge Hunt prejudged Solis-Diaz and determined that his convictions invariably warrant his lengthy sentence.

However, read in context, Judge Hunt seems to have been ruling that the governing case law at the time prevented him from considering the mitigating factors now at issue on appeal. He stated, for example, that "[i]n my opinion, the suggested options [for mitigation] are either unlawful or legally insufficient," RP at 48, and that "[n]one of the suggested mitigating factors recommended by the defense are legally sufficient," RP at 53. Judge Hunt, however, has not had an opportunity to analyze whether Solis-Diaz should receive an exceptional sentence in light of *O'Dell* or this opinion. Without a stronger showing of bias on the issues to be addressed on remand, we will not mandate disqualification.

As we discussed above, the sentencing court on remand must exercise its discretion regarding the possibility of an exceptional downward sentence based on mitigating factors that include the application of the multiple offense policy and consideration of Solis-Diaz's age and attendant levels of capacity and culpability. If Solis-Diaz believes that Judge Hunt cannot impartially follow our instructions and perform an individualized inquiry into the effects of

No. 46002-5-II

Solis-Diaz's youth, he may move for disqualification before the sentencing court. We express no

opinion as to whether Judge Hunt is disqualified on that basis.

CONCLUSION

We conclude that the sentencing court erred in failing to consider whether the operation

of the SRA's multiple offense policy and Solis-Diaz's youth at the time he committed the crimes

should mitigate his standard range sentence and warrant an exceptional downward sentence.

Therefore, we vacate Solis-Diaz's sentence and remand for resentencing proceedings consistent

with this opinion. We decline to disqualify Judge Hunt from making this inquiry, but note that

Solis-Diaz may move for disqualification before the sentencing court.

Bjorgen, C.J.

I concur:

Maxa. J.

14

No. 46002-5-II

Melnick, J. (concurrence) — Because the law has changed since the trial court sentenced Guadalupe Solis-Diaz, I concur that his sentence must be reversed and the matter should be remanded for a new sentencing hearing. I write solely to express my disagreement with the majority's opinion mandating what the sentencing court must consider on remand. The "Nature of the Inquiry on Resentencing" section exceeds the scope of what we have to decide, and anticipates the evidence the parties will present to the sentencing court. Majority at 8-11. The majority improperly establishes the sentencing court's scope on remand. First, the parties did not brief this issue, and we should not consider it. RAP 12.1(a). Second, because the resentencing has not occurred, the issue is not before us. If the parties do not present all of the evidence the majority opinion orders the sentencing court to consider, it cannot comply. Third, if the sentencing court fails to comply with applicable law, Solis-Diaz will once again have the right to appeal. Lastly, I have faith that the trial court will follow the law and properly consider all of the relevant evidence the parties present. And I also have faith that the parties will effectively present all of the evidence they believe will assist the court in resentencing Solis-Diaz.

_____
Melnick, J.

15