# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JULY 7, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 7, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 99865-5 |
| Respondent, | EN BANC |
| v. | Filed: <u>July 7, 2022</u> |
| LANCE A. THOMASON, | |
| Petitioner. | |

GORDON McCLOUD, J.—Lance A. Thomason attempted to steal about $15 worth of meat and cheese from Yoke's Fresh Market in Spokane and fought with a security guard on his way out. A jury convicted him of second degree robbery (in violation of RCW 9A.56.210), and the trial court imposed a 63-month sentence—a sentence at the bottom of the standard sentence range.

Thomason appealed; he argued that the "de minimis"—or insubstantial—nature of his crime, especially his supposedly minimal use of force, justified an exceptional sentence below the standard range. The Court of Appeals affirmed.

This court accepted review. We hold that under RCW 9.94A.535(1), the de minimis nature of a crime can constitute a substantial and compelling factor that supports an exceptional sentence below the standard range, in the appropriate case. An appropriate case is one in which (1) the legislature did not consider the

*State v. Thomason (Lance A.)*, No. 99865-5

mitigating factor already when it listed the elements of the crime or set the standard sentence range and (2) the factor constitutes a substantial and compelling reason to depart below the range.

Thomason fails to satisfy that test. In this case, the supposedly minimal level of force used (including punches aimed at the guard's face) was explicitly considered by the legislature when establishing the elements of robbery. *See* RCW 9A.56.190 and .210. No other factors in support of an exceptional sentence were raised or argued at trial or sentencing.[1] We therefore affirm the Court of Appeals.

FACTS AND PROCEDURAL HISTORY

I.      Thomason was convicted of second degree robbery

On September 5, 2018, Thomason entered Yoke's Fresh Market grocery store in Spokane. Verbatim Report of Proceedings (Jan. 14, 2020) (VRP) at 121. A plainclothes security guard, Daniel Swartz, followed Thomason around the store and watched him pick up about $15 worth of meat and cheese, proceed to another part of the store, and tuck the food down his pants. *Id.* at 124-27. Thomason then left the store without paying.

---

[1] Thomason does argue that the low value of the food, combined with the fact that the trial court found him indigent, supports an exceptional sentence below the standard range. Suppl. Br. of Pet'r at 29. But there is no support anywhere in this record for the inference he wants to draw from those two separate facts, that is, that he took the food because he was hungry.

*State v. Thomason (Lance A.)*, No. 99865-5

Swartz followed Thomason out and confronted him. *Id.* at 128. Swartz grabbed Thomason's arm, displayed his badge, and asked Thomason to go back inside the store. *Id.* at 128-30. Thomason tried to pull free, and Swartz warned him that he was only making the situation worse. *Id.* at 130. The two pulled at each other back and forth as Swartz tried to detain Thomason and Thomason tried to break free. *Id.* at 130; Ex. P-12.

During this exchange, Thomason swung at Swartz two times. Thomason used a closed fist, aimed at Swartz's face both times, and hit Swartz the second time with a glancing blow. VRP at 131-32. Swartz yelled at his partner, a guard in training, to help, but "[y]ou know, being a new person, kind of shock on his end." *Id.* at 131.

The fight moved to the shopping cart area, and then, according to Swartz, "That's when I was struck a third time and then me and the subject started going. I pulled his shirt over his head trying to gain control of him." *Id*. Thomason used a closed fist this third time, also. *Id.* at 132. Swartz testified that the third punch "hurt" and caused a minor injury: his face was sore and slightly red for a day or two. *Id.* at 133, 155. Thomason escaped by pulling out of his sweatshirt and running. *Id.* at 131-32.

*State v. Thomason (Lance A.)*, No. 99865-5

Swartz got into his car and gave chase. *Id.* at 136. He saw Thomason running through the neighborhood and then entering a house. *Id.* at 136, 139.[2] A car arrived at that house later; Thomason got in the passenger seat, and the car drove away. *Id.* at 139. Swartz reported the license plate number to law enforcement. *Id.*

The State charged Thomason with first degree robbery, Clerk's Papers (CP) at 1, but amended the charge to second degree robbery just before trial. *Id.* at 46. The State called Swartz to testify to the facts summarized above regarding the shoplifting and the fight, and called two police officers to testify about their investigation afterward.

Thomason did not testify. The defense theory at trial was that the State failed to prove that Thomason stole anything because, despite the struggle in the parking lot, Thomason did not drop or leave behind any food and his mother (to whose home he fled) did not find any extra food items at her house. VRP at 211-12.

The jury convicted Thomason of second degree robbery, in violation of RCW 9A.56.210, as charged. CP at 62.

---

[2] The police later determined that the house belonged to Thomason's mother. VRP at 112-14.

*State v. Thomason (Lance A.)*, No. 99865-5

II.     The trial court judge considered an exceptional sentence below the standard range but determined that the law barred him from imposing it; the court imposed 63 months, the bottom of the standard range, instead

At sentencing, the parties agreed that Thomason's offender score was 10. Sentencing Pursuant to Jury Verdict (Sentencing Tr.) at 4, 6. That made his standard sentencing range 63-84 months. Both defense counsel and the State recommended a 63 month sentence. *Id*. Neither presented any evidence about why Thomason took the food and neither argued that any factor was "substantial and compelling" enough to support a sentence below the range.

During allocution, however, Thomason himself sought an exceptional sentence below the standard range. He asked for a total of 12 months, which he implied was equivalent to the amount of time he would have served if he had qualified for drug court. *Id.* at 8-9.

The trial court rejected the request. The judge explained that he could not impose an exceptional sentence below the range based on Thomason's inability to qualify for the more rehabilitative option of drug court.

But the trial court sua sponte raised its own reason for considering an exceptional sentence below the standard range: that the crime was no more than a "glorified shoplifting charge" that should have been treated as a misdemeanor. *Id.* at 10. The court then rejected its own proposed basis for imposing an exceptional

*State v. Thomason (Lance A.)*, No. 99865-5

sentence, reasoning that it lacked the statutory authority to do so. The court explained:

> Well, first of all, Mr. Thomason, I want to say I'm—I'm sad that you're here. I made a comment to you at the end of the trial, I don't know if you remember.
>
>             . . . .
>
> And I said, you know, you were very well behaved, you were a gentleman during the trial, I appreciated that. And you're being a—a very courteous gentleman this morning. I don't—I don't like these charges. I'm not faulting the [S]tate; that's not what I mean. *But this is a particular charge I—I—and some of my judicial colleagues call it the glorified shoplifting charge where someone shoplifts and it ends up turning into a robbery because of a chain of events with security personnel generally, just like what happened here. So I agree with Mr. Zeller that it's a pretty significant punishment for what happened.*
>
> *Unfortunately, and I know the [S]tate agrees with me, I don't have much discretion here.* The only discretion I have is the time period between 63 and 84 months. That's all I've got. That's the only discretion I have. *I wish I had more.*

*Id.* at 9-10 (emphasis added).

The trial judge continued that he was "going to impose as low a sentence as I can, which is 63 months" because he did not "have discretion to go lower than that." *Id.* at 12.[3]

---

[3] The trial court also ruled that Thomason was indigent, so it waived multiple legal financial obligations. Sentencing Tr. at 12.

*State v. Thomason (Lance A.)*, No. 99865-5

III. The Court of Appeals affirmed

Thomason appealed on several grounds, and the Court of Appeals affirmed. *State v. Thomason,* No. 37369-0-III, slip op. at 1-2 (Wash. Ct. App. Apr. 6, 2021) (unpublished), https:/www.courts.wa.gov/opinions/pdf/373690_unp.pdf. It held in part that the trial court did not abuse its discretion by declining to impose an exceptional sentence because the trial court did not have the "facts before it that could legally support an exceptional sentence." *Thomason,* slip op. at 8-9. The Court of Appeals reasoned that the trial court "lacked authority to impose an exceptional sentence" because Thomason did not "put forth factors that would justify a sentence outside the standard range." *Id*. at 11.

Thomason petitioned for review of several issues. We granted review solely on the exceptional sentence issue. Order, *State v. Thomason*, No. 99865-5 (Wash. Oct. 6, 2021).

ANALYSIS

The task of defining crimes and punishments falls to the legislature. *State v. Wadsworth*, 139 Wn.2d 724, 734, 991 P.2d 80 (2000). The task of choosing which crime to charge falls to the executive branch—the prosecutor. *State v. Lewis*, 115 Wn.2d 294, 299, 797 P.2d 1141 (1990).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Thomason (Lance A.)*, No. 99865-5

But the task of interpreting the statutes defining crimes and punishments and measuring them against constitutional protections is entrusted to the judiciary. *Wadsworth*, 139 Wn.2d at 734-37; *United States v. Goodwin*, 457 U.S. 368, 372-85, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982).

In this case, we must interpret the second degree robbery statute, RCW 9A.56.210, and the statutes concerning exceptional sentences in the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, particularly RCW 9.94A.535, to determine whether the trial court correctly concluded that it lacked the discretion to impose an exceptionally low sentence. Statutory interpretation is a question of law that we review de novo. *State v. Graham*, 181 Wn.2d 878, 882, 337 P.3d 319 (2014). The main goal of our inquiry is to implement the legislature's intent. *Id*. We determine that intent by examining the plain language of the statutory provision in question; but we also consider the meaning of that language in the context of the whole statute and related statutes. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). If, after this inquiry, the statute is still ambiguous, then we resort to other aids of construction, such as legislative history. *Id*. at 12.

*State v. Thomason (Lance A.)*, No. 99865-5

I.      The plain language of the sentencing statute at issue here—RCW 9.94A.535(1)—gives the trial court power to impose an exceptional sentence below the standard range based on an unlisted mitigating factor; the de minimis nature of the defendant's conduct can constitute such a factor

The SRA determines sentence length for most felony criminal offenses in Washington. The SRA "structures, but does not eliminate, discretionary decisions affecting sentences." RCW 9.94A.010.  It does so by providing a grid, based on the seriousness of the crime and the offender's criminal history, to calculate the standard sentencing range. RCW 9.94A.510, .517, .515. The sentencing court must impose a sentence within that range, unless it finds a mitigating or aggravating factor[4] that provides a "substantial and compelling reason[]" to depart from that range and impose an "exceptional sentence," instead.  RCW 9.94A.535.

The SRA provides a nonexclusive list of mitigating circumstances that can support an exceptional sentence below the range. RCW 9.94A.535(1). The de minimis nature of the acts constituting a particular crime is not on that list. But the SRA states that its list of mitigating factors is "illustrative only and [the listed factors] are not intended to be exclusive reasons for exceptional sentences." *Id.*

---

[4] RCW 9.94A.535(2), (3) and .537 allocate decision-making authority for aggravating factors consistent with constitutional requirements.

9

*State v. Thomason (Lance A.)*, No. 99865-5

In *State v. Alexander*, this court held that the de minimis nature of a crime *can* constitute such a nonlisted mitigating factor sufficient to support an exceptional sentence below the range. 125 Wn.2d 717, 888 P.2d 1169 (1995). The parties in this case debate the reach of *Alexander*: Thomason argues that *Alexander*'s holding is not limited to the facts of the case but has a wider reach, while the State argues that it is limited to the facts of that drug delivery case. Suppl. Br. of Pet'r at 25; Suppl. Br. of Resp't at 27.

We agree with Thomason's argument on this point. The defendant in *Alexander* facilitated a drug purchase to an undercover officer who bought 0.03 of a gram of cocaine—an amount too small to remeasure. *Alexander*, 125 Wn.2d at 719. The defendant was convicted of delivery of a controlled substance. The trial court, however, imposed an exceptional sentence below the range—departing downward from a low-end limit of 36 months to an exceptional 18 months— because Alexander had minimal involvement in the crime and because the amount of cocaine at issue was extraordinarily small.

We affirmed. We held, in part, that the de minimis nature of the crime supported the exceptional mitigated sentence. *Id.* at 719-20.[5]

---

[5] The trial court also justified its exceptional sentence because "Alexander's participation in the drug hierarchy was only peripheral," but our court rejected this basis for exceptional sentence. *Alexander*, 125 Wn.2d at 720, 731. However, the court found

10

*State v. Thomason (Lance A.)*, No. 99865-5

But we did not limit our holding to drug delivery cases with small amounts of cocaine. Instead, we applied the test courts use to determine whether a proposed nonstatutory mitigating factor can support an exceptional sentence in any case: the two part "*Grewe* test."[6] Under that test, (1) the factor cannot support an exceptional sentence if the legislature *necessarily* considered that factor when it established the standard range and (2) the factor cannot support an exceptional sentence unless it is substantial and compelling enough to distinguish the crime in question from others in the same category. *State v. O'Dell*, 183 Wn.2d 680, 690, 358 P.3d 359 (2015).

This court ruled that the *Grewe* test was satisfied in *Alexander*. We explained that neither the language of the drug delivery statute (former RCW 69.50.401(a)(1)(i)(A) (1989)) nor the language of the applicable SRA sentencing statute (former RCW 9.94A.370(1) (1989)[7]) indicated that the legislature had considered the de minimis amount of drugs that might be involved in a particular delivery. *Alexander*, 125 Wn.2d at 727. Hence, the sentencing judge could

the other two reasons were sufficient to justify the exceptional sentence below the range. *Id.* at 719.

[6] *State v. Grewe*, 117 Wn.2d 211, 813 P.2d 1238 (1991).

[7] Recodified as RCW 9.94A.530 by Laws of 2001, ch. 10, § 6.

11

*State v. Thomason (Lance A.)*, No. 99865-5

consider the de minimis amount of the drugs in Alexander's case as a mitigating factor that might support an exceptional sentence. *Id.* at 726.[8]

*Alexander*'s conclusion that the de minimis nature of the crime can constitute a valid mitigating factor is not limited to the facts of that case. The de minimis nature of the crime can be a mitigating factor anytime it passes the *Grewe* test: the de minimis nature of the crime must be a factor that the legislature did not necessarily consider when it enacted the elements of the crime or the standard sentence range, and the de minimis nature of the crime must be a factor that is substantial and compelling enough to warrant a downward departure.

II.     Thomason fails the first part of the *Grewe* test: the legislature *did* necessarily consider the use of a de minimis amount of force when it defined the crime of robbery

In this case, Thomason fails the first part of the *Grewe* test:  whether the legislature necessarily considered the main mitigating factor he asserts[9] when it enacted the elements of the crime of robbery.  *O'Dell*, 183 Wn.2d at 690.

---

[8] Similarly, the *Alexander* court ruled that the legislature did not consider "the specific gradations in the defendant's level of involvement" in the crime when it established the standard sentence because the level of involvement was "neither a statutory element of the crime" nor "an element considered in computing the standard range." *Alexander,* 125 Wn.2d at 729.

[9] The main mitigating factor that Thomason argues is his supposedly de minimis use of force. Suppl. Br. of Pet'r at 25-28. To be sure, he and amici also argue that being hungry and stealing food to eat should also be considered a mitigating factor. *Id.* at 29;

*State v. Thomason (Lance A.)*, No. 99865-5

Thomason asserts his crime is de minimis because, as the judge said at sentencing, it was a "glorified shoplift[]"—in other words, the value of the items taken was low; no force was used to accomplish the taking; force was used to retain the property, but it was what Thomason characterizes as "minor" force. In Thomason's words, the "de minimis theft of food items inside a store followed by minor force against a store representative outside" constituted a mitigating factor justifying an exceptional sentence in his case. Suppl. Br. of Pet'r at 25.

We disagree. The plain language of the robbery statute shows that the legislature did consider a defendant's minimal use of force when it defined the crime of second degree robbery. The second degree robbery statute, RCW 9A.56.210, incorporates the elements listed in RCW 9A.56.190's definition of robbery. That definitional statute provides that a person commits robbery when he or she

> unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, *or* fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; *in either of which cases*

---

Br. of Amici Curiae the Way to Justice & the Am. Civil Liberties Union of Wash. at 15-16. But there is no evidence anywhere in this record that Thomason was hungry, that he lacked sufficient funds to eat or carry on other daily activities, or that he stole in order to eat. Thus, we do not reach the issue of when hunger or poverty will constitute a mitigating factor sufficient to support an exceptional sentence below the standard range.

*State v. Thomason (Lance A.)*, No. 99865-5

> *the degree of force is immaterial*. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

RCW 9A.56.190 (emphasis added).[10]

As the emphasized language shows, the legislature clearly considered whether the crime of second degree robbery should punish a taking combined with a minimal showing of force. It criminalized a taking in which either "force" "*or*" no force at all—just "*fear*"—is used to accomplish the taking. RCW 9A.56.190 ("by the use or threatened use of immediate force, violence, or *fear* of injury," "[s]uch force *or fear* must be used to obtain or retain possession of the property" (emphasis added)).

The legislature even said that where, as here, "[s]uch force or fear" is used to "obtain *or retain* possession of the property, or to prevent or overcome resistance to the taking . . . *the degree of force is immaterial*." *Id*. (emphasis added). The language "the degree of force is immaterial" shows that the legislature considered different levels of force, decided that any force at all suffices, and further decided that force is not even necessary because fear of injury itself is enough.

---

[10] In addition, the State must prove the nonstatutory element of a specific intent to steal. *See In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255-56, 111 P.3d 837 (2005) ("'our settled case law is clear that "intent to steal" is an essential element of the crime of robbery' " (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 98, 812 P.2d 86 (1991))).

*State v. Thomason (Lance A.)*, No. 99865-5

It necessarily follows that the supposedly[11] de minimis nature of the force used in this case was necessarily considered by the legislature when establishing the elements of second degree robbery. It cannot support an exceptional sentence downward.

CONCLUSION

The de minimis nature of a defendant's conduct can constitute a valid mitigating factor in any case, as long as (1) the legislature did not necessarily consider that factor in setting the elements of the crime or the standard sentence range and (2) the factor constitutes a "substantial and compelling" reason for departing below that range. In this case, the legislature did necessarily consider and criminalize use of even a minimal level of force to take or retain property when it enacted the second degree robbery statute. It declared that the amount of force used was "immaterial."

We affirm the Court of Appeals.

---

[11] The uncontradicted evidence at trial showed that Thomason scuffled with the security guard and aimed three punches, with a closed fist, at the guard's face. He really connected only once. Nothing in this opinion is intended to imply that such offensive use of a closed fist is minimal.

15

*State v. Thomason (Lance A.)*, No. 99865-5

Gordon McCloud, J.

WE CONCUR:

González, C.J.

Stephens, J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

Whitener, J.

*State v. Thomason*, No. 99865-5 (González, C.J., concurring)

No. 99865-5

GONZÁLEZ, C.J. (concurring) — The majority correctly applies controlling, unchallenged precedents to this case.  Under those controlling, unchallenged precedents, the trial judge had no discretion to depart downward from the standard range based on the comparatively minimal amount of force used to retain the minimal value of food taken.  *See State v. O'Dell*, 183 Wn.2d 680, 690, 358 P.3d 359 (2015). The legislature unmistakably intended that a standard range sentence be imposed when a person uses any degree of force to retain stolen property.  *See* RCW 9A.56.190.  I also agree that Thomason has not established a downward departure is otherwise justified.

I write separately, however, because I am increasingly troubled by our controlling, unchallenged precedents and the sentencing laws they interpret.  The Sentencing Reform Act of 1981, ch. 9.94A RCW (SRA), was enacted, at least in part, with the noble goal of constraining discrimination in our criminal justice system.  *See* RCW 9.94A.340; David Boerner & Roxanne Lieb, *Sentencing Reform in the Other Washington*, 28 CRIME & JUST. 71, 72, 125 (2001) (stating that

1

*State v. Thomason*, No. 99865-5 (González, C.J., concurring)

Washington's sentencing guidelines suggest, among other things, that "unconstrained discretion in sentencing operates to favor whites and disfavor members of minority groups"); Kate Stith & Steve Y. Koh, *The Politics of Sentencing Reform: The Legislative History of the Federal Sentencing Guidelines*, 28 WAKE FOREST L. REV. 223, 223 (1993). However, there is considerable and growing evidence it has failed at that goal. RESEARCH WORKING GRP., TASK FORCE 2.0, RACE AND WASHINGTON'S CRIMINAL JUSTICE SYSTEM: 2021 REPORT TO THE WASHINGTON SUPREME COURT 3-5 (2021), https://digitalcommons.law.seattleu.edu/korematsu_center/116 (TASK FORCE 2.0); KATHERINE BECKETT & HEATHER D. EVANS, ABOUT TIME: HOW LONG AND LIFE SENTENCES FUEL MASS INCARCERATION IN WASHINGTON STATE (2020), https://www.aclu-wa.org/docs/about-time-how-long-and-life-sentences-fuel-mass-incarceration-washington-state. The fact that Black people make up 3.5 percent of Washington's population and a staggering 19 percent of Washington's prison population suggests that efforts to constrain discrimination in the criminal justice system have failed profoundly. BECKETT & EVANS at 28. Beckett and Evans report that "[l]ong and life sentences are disproportionately imposed on people of color, and in particular, on [B]lack and Native American defendants." *Id.* at 27. Despite what is often repeated, even in this courthouse, there is little evidence that people of color commit more crimes than the population as a whole and

2

*State v. Thomason*, No. 99865-5 (González, C.J., concurring)

considerable evidence to the contrary. *See* TASK FORCE 2.0 at 28-29, 34; Task

Force on Race and the Criminal Justice System Research Working Group*,

Preliminary Report on Race and Washington's Criminal Justice System* at 1-2, 9,

47 GONZ. L. REV. 251 (2011), 35 SEATTLE U. L. REV. 623 (2012), 87 WASH. L. REV.

1 (2012) (pinpoints to PDF available at https://perma.cc/6BV4-RBB8); Christopher

Ingraham, *White People Are More Likely To Deal Drugs, But Black People Are

More Likely To Get Arrested For It*, WASH. POST (Sept. 30, 2014)

https://www.washingtonpost.com/news/wonk/wp/2014/09/30/white-people-are-

more-likely-to-deal-drugs-but-black-people-are-more-likely-to-get-arrested-for-it/.

While, perhaps, the SRA constrains some judicial discrimination and

favoritism at sentencing, it does so at the cost of making it impossible for judges to

avoid imposing a sentence driven by the injustices embedded in the criminal

justice system, no matter how obvious those injustices might be. If anything, the

SRA has made discrimination in sentencing more difficult to detect, let alone

remedy, by transferring significant discretion from the judge at sentencing to the

prosecutor at charging. *See* David Boerner, *Sentencing Guidelines and

Prosecutorial Discretion*, 78 JUDICATURE 196, 197 (1995).

A law is unconstitutional when it is imposed in an arbitrary and racially

disproportionate matter, regardless of whether any individual decision maker is

consciously biased. *See State v. Gregory*, 192 Wn.2d 1, 5, 427 P.3d 621 (2018)

*State v. Thomason*, No. 99865-5 (González, C.J., concurring)

(plurality opinion). Sentencing schemes that regularly produce arbitrary and racially discriminatory results are, at best, constitutionally suspect.

For some, the conclusions of the Working Group, Task Force 2.0 and the Beckett and Evans report must be further tested, proved, or disproved before we act on them. I encourage this testing by academics, in court, and by the legislature, though I have seen enough to credit many of their conclusions.

We must find a way to live justly with one another. We must not steal from each other or strike each other. But when it happens, the State must not respond with a disproportionate punishment. I am increasingly concerned that sentences like this for what amounts to glorified shoplifting are simply not just and speak to deep problems with our sentencing systems.

With these observations, I respectfully concur.

González, C.J.