**FILED**
**AUGUST 21, 2025**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40269-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LOUIS L. HANSON, also known as | ) | |
| LOUIS L. MONTOYA, | ) | |
| | ) | |
| Appellant. | ) | |

MURPHY, J. — In 2022, Louis Hanson, also known as Louis Montoya,[1] appealed

from a resentencing, claiming the trial court erred in denying him an exceptional sentence

downward and failing to consider several convictions as the same criminal conduct. In

2023, we rejected Montoya's arguments, but "remand[ed] with directions to make a

ministerial correction to the offender score and with leave to the trial court, in its

discretion, to conduct a further resentencing." Clerk's Papers (CP) at 82. On remand, the

trial court exercised its discretion to make only a ministerial correction to the judgment

and sentence.

---

[1] In accordance with his stated preference during the trial court proceedings, we refer to the appellant as Louis Montoya.

Montoya appeals from the corrected judgment and sentence, arguing that the trial court erred when it made a ministerial correction to his judgment and sentence rather than conducting a resentencing. He also claims a $500 crime victim penalty assessment (VPA) and $100 DNA collection fee should be struck from his judgment and sentence based on recent statutory changes. Finding no error, we affirm.

FACTS

Our recitation of facts is drawn primarily from our previous decisions. *See State v. Hanson*, No. 32129-1-III (Wash. Ct. App. Jan. 26, 2016) (unpublished) (*Hanson* I), http://www.courts.wa.gov/opinions/pdf/321291.unp.pdf; *State v. Hanson*, No. 38535-3-III (Wash. Ct. App. Mar. 21, 2023) (unpublished) (*Hanson* II), https://www.courts.wa.gov/opinions/pdf/385353_unp.pdf. In 2013, Louis Montoya was convicted of first degree murder. He was sentenced as a persistent offender to life without the possibility of parole. The sentencing court noted the following on the criminal history section of the judgment and sentence:

| Crime | Date of Crime | Crime Type | Adult or Juv | Place of Conviction | Sent. Date |
|---|---|---|---|---|---|
| 2 ASSAULT 2 | 082104 | V | A | SPOKANE CO, WA | 120604 |
| 2 ASSAULT 2 | 082104 | V | A | SPOKANE CO, WA | 120604 |
| 2 ROBBERY 1 | 082104 | V | A | SPOKANE CO, WA | 120604 |
| TMVWOP | 091703 | NV | A | WHITMAN CO, WA | 110703 |
| MAL MISCHIEF 1 | 120701 | NV | A | SPOKANE CO, WA | 031402 |
| 1 ROBBERY 2 | 120701 | V | A | SPOKANE CO, WA | 031402 |

CP at 3. The notation of "1" next to the 2001 date of crime for second degree robbery,

and the "2" notated next to the 2004 date of crime for two counts of second degree

assault and one count of first degree robbery refer to Montoya's first and second "strike"

offenses that qualified Montoya for sentencing as a persistent offender. CP at 3. The court

in 2013 also imposed a $500 VPA and a $100 DNA collection fee as part of the sentence.

In 2021, the Washington Legislature amended the Sentencing Reform Act of 1981

(SRA), chapter 9.94A RCW, to require resentencing when a persistent offender finding

was predicated on a second degree robbery conviction. LAWS OF 2021, ch. 141, § 1,

*codified as* RCW 9.94A.647. Montoya's 2013 sentence as a persistent offender included

a finding based on a 2001 date of crime conviction for second degree robbery, that

resulted in the trial court ordering resentencing.

During the 2021 resentencing, Montoya requested an exceptional sentence

downward, claiming the victim was the first aggressor in the incident and Montoya shot

the victim while under duress. The State requested a sentence within the standard range.

The transcript from the resentencing hearing was not included in the record on

review in the present appeal, but this court's unpublished opinion from Montoya's prior

appeal includes the following from the October 12, 2021, resentencing hearing:

> THE COURT: And so you would agree that his offender score is an 11? It, in essence, is a 9-plus for purposes of the range that I'm dealing with however.

3

> [DEFENSE COUNSEL]: A 9-plus, yes, Your Honor.
> THE COURT: And are [you] in agreement with the month range as well as the enhancement amount?
> [DEFENSE COUNSEL]: Yes, Your Honor.

*Hanson* II, slip op. at 5-6.

The resentencing court considered but declined to grant a mitigating downward sentencing departure:

> The defendant has asked that I find that there are mitigating factors, and kind of in a shortcut way, it is for this Court to determine by a preponderance of the evidence whether the victim was an initiator, willing participant, or an aggressor. The other piece of that is a failed defense or a failed self-defense claim. As I review the briefing, both are appropriate. It certainly is an argument that the statute allows the defendant to make, and [defense counsel] has done what I deem to be a really straightforward way of putting that before the Court. The statute outlines those mitigating factors.
> The question before this Court is whether those mitigating factors should be applied in this circumstance. The case law outlined in [defense counsel's] briefing does give the examples of when it is appropriate, the examples of how other courts have found those mitigating factors.
> In analyzing all of this information, I come back then to what was the defendant found guilty of and what is his criminal history. In reviewing the case law and the facts outlined, including the failed defense cases, I find that I cannot get myself to that level of granting the mitigating factors here and finding by a preponderance that the victim was an aggressor in this matter. It is clear that there was a fight, but the information before this Court was that Mr. [Montoya] started the fight.
> The perceptions are perception. I'm not sure how the Court gets to the bottom of perceptions, but I'm being asked to then find this failed defense and use that as a mitigating factor for sentencing. I am not going to do that. I am declining to use either one of the elements as a basis for mitigating factors here.

*Hanson* II, slip op. at 6.

The trial court issued the amended judgment and sentence on October 14, 2021. With an offender score of "11," the standard sentencing range was 411 to 548 months plus a 60-month firearm enhancement, and the court resentenced Montoya to a midrange sentence of 480 months plus the 60-month firearm enhancement for a total of 540 months of confinement. The resentencing court also imposed a $500 VPA and $100 DNA collection fee.

Montoya appealed from his amended judgment and sentence. On March 21, 2023, this court issued an opinion rejecting Montoya's claims that the trial court erred in denying his request for an exceptional sentence downward and in refusing to find some of his earlier convictions constituted the same criminal conduct. This court did, however, accept the agreement of the parties that the offender score, through no fault of the resentencing court, incorrectly calculated Montoya's offender score as an "11" instead of a "10" due to an error in counting Montoya's prior conviction for first degree robbery as three points rather than two points. However, because Montoya's offender score remained a "9+," the sentencing range did not change. The case was remanded with directions to the trial court to make a ministerial correction to the offender score and "with leave to the trial court, in its discretion, to conduct a further resentencing . . . if it determines that the recalculated offender score would likely have an impact on the

sentence imposed." *Hanson* II, slip op. at 16-17. The mandate terminating our review was filed April 27, 2023.

On November 29, 2023, the same trial judge who presided over the 2021 resentencing held a hearing on remand. The parties stipulated to an offender score of "9+." The trial court stated its intent to not proceed with a full resentencing:

> In my review of the Court of Appeals [decision], and I do have a procedural record that I'm going to make. It does give me the authority, as the Judge that heard this matter back in 2021. I do have the authority to determine whether this is just a ministerial changing of that offender score or are we going back into a complete resentencing. . . .
>
> I then went back and reviewed the file to refresh my memory as what originally occurred and then what I did in 2021, based upon Senate Bill 5164. And at this point in time, what my intent is, is to correct the offender score ministerially. . . . I am not going to be resentencing in this matter, but I will make a record with regards to that. . . .

Rep. of Proc. (RP) (Nov. 29, 2023) at 20.

After stating this intent, the court gave the parties an opportunity to present argument. Montoya's counsel argued for a full resentencing:

> [W]e do believe that it would be appropriate to conduct a resentencing. I do think that the alteration to the offender score, while it doesn't change the point or the range specifically, I think it does materially alter potentially the situation. I think that that would be a basis to go ahead and address all these issues. My suggestion would be to schedule a full resentencing, with a briefing schedule, in order to address those issues. I think that Mr. Montoya certainly wishes and deserves to have those issues heard again by this Court.

No. 40269-0-III
*State v. Hanson*

RP (Nov. 29, 2023) at 21. The State made no additional argument. Neither party provided

the trial court with any written submissions.

The trial court orally ruled:

> In October of 2021, there was a full resentencing that was done by the trial court. And, specifically, by myself. . . .
> The parties at the time, calculated his offender score and stipulated to it as an 11. The standard sentencing range for that offender score, basically because it was a nine plus, was 411 months to 548 months, with a 60 month weapon enhancement. This is the same standard sentencing range for an offender score of a nine on up beyond—even beyond an 11 if there was an offender score that occurred.
> Mr. Montoya is not in any position other than what he was originally resentenced to at an 11, but for today's purposes he is technically a 10. The judgment and sentence will reflect that he is a nine plus.
> At the time I imposed a mid-range sentence . . . for a total months to serve of 540. Obviously, Mr. Montoya was given credit for the time that he has served and other than that, I don't believe that the judgment and sentence was altered much.
> . . . .
> The Court of Appeals directed the offender score to be corrected. And also, left it up to the trial court, which in this case is me, whether to resentence again for today's purposes, with an offender score of a 10 or nine plus for specificity purposes.
> The standard sentencing range does not change. It is still 411 months to 548 months. The change of the offender score from an 11 to a 10 does not change my initial decision or my decision at the time of resentencing, based upon all of the information that I had, that I reviewed, that I contemplated in making the decision to impose a mid-range sentence.
> The offense before the Court is the first degree murder that he was facing at the time in 2013 for sentencing purposes. Verdict was in 2013.

RP (Nov. 29, 2023) at 24.

On February 9, 2024, the trial court issued an "Order Amending Judgment and Sentence to Correct the Offender Score Re: Mandate." CP at 123 (some capitalization omitted). The order stated:

> After reviewing the case record to date, and the basis for the motion, the court finds that good cause exists to correct the offender score. The parties stipulated that the defendant's offender score is "10." The parties agree that the judgment and sentence should reflect the appropriate offender score of "9+." The court further finds that the change in the offender score does not change the court's initial decision, or its decision at the time of resentencing, based on all of the information the court had, that was reviewed and contemplated when making the decision to impose a mid-range sentence. The Court's reasoning in sentencing the defendant to 540 months is not disturbed by the ministerial correction to the offender score. The court finds that the Court of Appeals granted this court discretion on remand, and in exercising that discretion, this court is declining to go forward with another resentencing hearing.

CP at 124.

Montoya moved for reconsideration. He argued that an exceptional sentence downward was warranted, based in part, on (1) his young age at the time of his 2001 date of crime second degree robbery conviction, (2) some of his prior crimes constituting the same course of conduct, and (3) Montoya's rehabilitation efforts while incarcerated. Montoya additionally submitted, for the first time, certificates from various programs in which he had engaged while incarcerated.

On February 27, 2024, the trial court denied Montoya's motion, noting his arguments on reconsideration "were known to the Court of Appeals when they made their

8

March 21, 2023 Unpublished Decision. Even with this knowledge, the Court of Appeals did not specifically mandate resentencing, but gave the trial court discretion." CP at 128. The court made its decision after review of Montoya's motion, "the files and records herein and keeping in mind the oral argument provided at the time of the November 29, 2023 hearing." CP at 127.

Montoya timely appeals.

## ANALYSIS

*Order amending judgment and sentence*

Montoya argues the trial court abused its discretion in declining to hold a full resentencing hearing.

Montoya cites to case law concerning a trial court's exercise of discretion during a sentencing or resentencing hearing. *See State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005) (holding trial court must meaningfully consider mitigating evidence and an exceptional sentence downward at sentencing); *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017) (noting a sentencing court abuses its discretion by failing to recognize its discretion to impose mitigating sentence for which defendant may be eligible). Because the cases cited by Montoya address a trial court's discretion *during* a sentencing hearing, they are not helpful to the primary issue presented for review in this

case: a trial court's discretion in deciding whether to hold a full resentencing hearing or to make a ministerial correction to a judgment and sentence.

Resentencing is not required for an incorrectly calculated offender score that does not affect the standard range unless the trial court indicated its intent to sentence at the low end of the sentencing range. *See State v. Kilgore*, 141 Wn. App. 817, 824-25, 172 P.3d 373 (2007) (*Kilgore* I), *aff'd*, 167 Wn.2d 28, 216 P.3d 393 (2009) (*Kilgore* II) (plurality opinion); *see also State v. Fleming*, 140 Wn. App. 132, 138, 170 P.3d 50 (2007); *State v. Argo*, 81 Wn. App. 552, 915 P.2d 1103 (1996).

On remand from this court, the trial court was given discretion to resentence Montoya "if it determines that the recalculated offender score would likely have an impact on the sentence imposed." *Hanson* II, slip op. at 17. Consistent with our mandate, the trial court understood its authority to either perform a ministerial correction or conduct a full resentencing. The trial court reviewed the record of its 2021 resentencing decision and found no mitigating factors supportive of Montoya's request for a downward departure from the standard range. The trial court determined the ministerial correction to Montoya's offender score from "11" to "10" did not change its prior decision or its underlying reasoning for sentencing Montoya to a mid-range sentence, as the score remained a "9+" in relation to the first degree murder conviction. Declining to conduct a resentencing was not an abuse of discretion, especially where the score

reduction was only due to an error in calculating one of Montoya's prior convictions as three points instead of two, and none of his convictions were vacated.

Montoya also cites to *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015), to argue the trial court abused its discretion by failing to consider his youth as a potential mitigating factor. In *O'Dell*, the Supreme Court held youth must be considered as a potential mitigating circumstance *in imposing a sentence* on a defendant who committed the crime "just a few days after he turned 18." *Id*. at 696. *O'Dell* does not support that youth must be considered when the trial court makes a decision on *whether* to hold a resentencing hearing. Further, Montoya has not shown that his youth at the time he committed the *2001 offense of second degree robbery* would have entitled him to a mitigated sentence in 2021 for his separate *first degree murder* conviction had his offender score been correctly calculated.

Montoya next claims the trial court failed to consider evidence of his rehabilitation, citing two federal cases: *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011), and *United States v. Salinas-Cortez*, 660 F.3d 695 (3d Cir. 2011). While these cases support that evidence of a defendant's postsentence rehabilitation may be considered as a mitigating factor *in some jurisdictions*, they do not align with Washington law on sentencing and do not provide that such information must be considered in deciding *whether* to resentence. *See State v. Wright*, 19 Wn. App. 2d 37,

47, 493 P.3d 1220 (2021) ("While other sentencing schemes may permit or encourage consideration of rehabilitation upon resentencing, Washington's *present* scheme does not."); *see also State v. Law*, 154 Wn.2d 85, 89, 110 P.3d 717 (2005). Montoya does not convincingly show that such evidence would entitle him to a mitigated sentence where this court has expressly held rehabilitation does not qualify as a mitigating factor under the SRA. *See Wright*, 19 Wn. App. 2d at 47.

The trial court did not abuse its discretion in declining to hold a full resentencing hearing.

*VPA and DNA collection fee*

Montoya argues that the VPA and DNA collection fee should be struck from his judgment and sentence.

Montoya was resentenced in October 2021. At that time, former RCW 7.68.035(1)(a) (2018) required the imposition of a VPA for any individual found guilty of a crime in superior court. Additionally, former RCW 43.43.7541 (2018) required a DNA collection fee of $100 be imposed for certain listed felony offenses.

In 2023, our legislature amended both statutes to prohibit the imposition of the VPA on indigent defendants, RCW 7.68.035(1), (4), and eliminate the DNA collection fee, RCW 43.43.7541. LAWS OF 2023, ch. 449, §§ 1, 4. The amendments took effect on July 1, 2023, and apply prospectively to cases pending on direct appeal that were not

yet final. *State v. Ellis*, 27 Wn. App. 2d 1, 17, 530 P.3d 1048 (2023), *review granted*,

4 Wn.3d 1009, 564 P.3d 547 (2025).

To determine whether Montoya's case was final when the statutory amendments

took effect, we look to whether any appealable issues remained when the trial court

corrected Montoya's judgment and sentence. *See Kilgore* II, 167 Wn.2d at 37. The

Supreme Court's analysis in *Kilgore* II is instructive:

> [A] case has no remaining appealable issues where an appellate court issues
> a mandate reversing one or more counts and affirming the remaining count,
> and where the trial court exercises no discretion on remand as to the
> remaining final count. [*State v.*] *Barberio*, 121 Wn.2d [48,] 51[, 846 P.2d
> 519 (1993)]."Only if the trial court, on remand, exercised its independent
> judgment, reviewed and ruled again on such issue does it become an
> appealable question." *Id*. at 50. . . .
> . . . .
>
> [W]hen, on remand, a trial court has the choice to review and resentence a
> defendant under a new judgment and sentence or to simply correct and
> amend the original judgment and sentence, that choice itself is not an
> exercise of independent judgment by the trial court. The reason that choice
> is not an independent judgment is because if the trial court simply corrects
> the original judgment and sentence, it is the original judgment and sentence
> entered by the original trial court that controls the defendant's conviction
> and term of incarceration.

*Id.* at 37 (footnote omitted).

Here, Montoya was resentenced in October 2021. This court's mandate from

Montoya's appeal of that resentencing was issued in April 2023, prior to the July 1, 2023,

effective date for the amendments. With the trial court making a ministerial correction to

Montoya's 2021 judgment and sentence, no appealable issue remained when this court issued the April 2023 mandate.

Montoya is not entitled to relief from these financial obligations on appeal. However, he may still seek relief in the trial court. RCW 7.68.035(5)(b) ("Upon motion by a defendant, the court shall waive any [VPA] imposed prior to July 1, 2023, if . . . [t]he person does not have the ability to pay the penalty assessment."); RCW 43.43.7541(2) ("Upon motion by the offender, the court shall waive any fee for the collection of the offender's DNA imposed prior to July 1, 2023.").

## CONCLUSION

We affirm the trial court's order amending the judgment and sentence to correct the offender score regarding the mandate.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Fearing, J.

14